IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVEN P. LOCKHART, ALICIA LOCKHART, and DONNA LOCKHART, | |
| Plaintiffs, | |
| v. | Case no. 21-cv-1033-SPM |
| RUSSELL ADAMS, ANDREW ROTMAN, TRENTON MASTERSON, JAMES WHITE, DIANE BRADY, KAREN KENSLER, BILLIE FORSYTHE, BRENDA BUCHANAN, CITY OF LAWRENCEVILLE, ILLINOIS, a municipal corporation, and LAWRENCE COUNTY, ILLINOIS | |
| Defendants. | |

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court are four separate Motions for Summary Judgment, one each filed by defendant Diane Brady ("Brady"), Karen Kensler ("Kensler"), Brenda Buchanan ("Buchanan"), and Billie Forsythe ("Forsythe"), collectively referred to "defendants" herein (Docs. 104, 105, 119, and 120). For the reason's set forth below, the Court **GRANTS** the Motions for Summary Judgment.

### JURISDICTION

Federal courts have original jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. §1331. Counts I – IV are brought pursuant to 42 U.S.C. 1983. This Court has supplemental jurisdiction over the state law claims of abuse of process and intentional infliction of emotional distress as pled in counts V and IV of the amended complaint (Doc. 61). Indeed, "[D]istrict courts

shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Accordingly, as a federal court exercising supplemental jurisdiction over state law claims, we apply the governing state law—here, Illinois. *See Felder v. Casey*, 487 U.S. 131, 151 (1988).

## PROCEDURAL HISTORY[1]

On August 19, 2021, plaintiffs Steven P. Lockhart ("Steven"), Alicia Lockhart ("Alicia"), and Donna Lockhart ("Donna"), filed their initial complaint against Brady, Buchanan, Kensler, and Forsythe, along with Russell Adams ("Adams"), Andrew Rotman ("Rotman"), Trenton Masterson ("Masterson"), James White ("White"), and the Lawrence County, Illinois (Doc. 1). This Complaint was stricken, and on August 20, 2021, the complaint was refiled correctly (Doc. 4).

On December 29, 2021, this case was assigned CJRA Track C, with the jury trial date presumptively set in May of 2023 (Doc. 50). On January 21, 2022, a scheduling Order was entered, providing a discovery deadline of December 22, 2022 with a dispositive motion deadline of January 20, 2023 (Doc. 60).

On February 1, 2022, plaintiffs filed a six-count amended complaint (Doc. 61). Counts I-IV were brought pursuant to 42 U.S.C. §1983 against defendants Rotman, Masterson, Adams, and White, respectively, while Counts V and VI were brought against defendants Brady, Forsythe, Kensler, and Buchanan, individually and as a group, for alleged abuse of process and intentional infliction of emotion distress (*Id.*).

---

[1] This section highlights the involvement of Brady, Buchanan, Forsythe, and Kensler.

Specifically, plaintiffs claimed the women "entered into an unlawful conspiracy with a goal to harass and intimidate Steven, Alicia and Donna and force them to move out of the neighborhood" and to "knowingly cause severe emotional distress to Steven" (Id, ¶¶ 74 and 83).

On February 23, 2022 and March 3, 2023, the women filed their respective answers to the amended complaint (Docs. 64 - 66, and 71). Within her amended answer, Brady also raised the statute of limitations as an affirmative defense (Doc. 66).

On September 30, 2022, the scheduling order was amended at the request of the parties, pushing the discovery deadline to May 10, 2023 and the dispositive motion deadline to July 10, 2023 (d/e 81, 82). At that time, the presumptive trial setting was also pushed from May to November of 2023 (*Id.*). The dispositive motion deadline was later extended to August 1, 2023 (d/e 92).

On August 1, 2023, Brady, Buchanan, Kensler, and Forsythe filed their respective motions for summary judgment (Docs. 104, 105, 109 – 110). At their request, the motions filed by Buchanan and Forsythe were stricken because they contained confidential and vital information, but were refiled on August 2, 2023 with the requisite redactions (Docs. 119, 120). All four defendants argued that plaintiffs could not establish, as a matter of law, the requisite elements of their claims (Docs. 104-105, 109-110). Defendants also adopted the arguments made in the various motions and contended that the abuse of process claim was barred by the applicable statute of limitations(*Id.*).

Pursuant to a valid extension of time, on October 16, 2023, plaintiffs filed responses in opposition to the afore-mentioned motions for summary judgment, also adopting responses made to each of the motions (Doc. 135 – 137). Within the responses,

plaintiffs contended that the complaint was filed within the applicable statute of limitations, reasoning that the continuing violation doctrine should apply (*Id.*) Plaintiffs also disputed that there were no material facts in dispute that preclude summary judgment (*Id.*).

On October 30, 2023, Brady filed a reply addressing two issues that were raised in plaintiffs' response, including the premise that an abuse of process claim can be a continuing tort and that Steven was particularly susceptible to emotional turmoil (Doc. 147).

At this time, these motions are ripe.

## STATEMENT OF FACTS[2]

Steven previously owned and lived at a home located at 11072 Stoltz Boulevard, Lawrenceville, IL.[3] Alicia, Steven's daughter, lived at the Stoltz Boulevard residence, at times with Steven and at times with her boyfriend. Donna, Steven's ex-wife and Alicia's mother, worked as a travelling nurse and resided in Robinson, Illinois, but sometimes slept at the Stoltz Boulevard residence.

On November 5, 2018, Forsythe obtained a plenary stalking/no contact order against Steven that was issued in Lawrence County, Illinois, cause number 18-OP-153,

---

[2] In an effort to mete out immaterial and irrelevant facts, this Court has prepared its own statement of material facts based upon the parties' submissions herein, as well as the exhibits attached thereto. This statement only includes facts which would be admissible at trial and which are adequately supported and material to the issues in this case. This section does not include unsubstantiated allegations.

[3] The Court notes that plaintiffs asserted that Brady helped Steven purchase the home; however, that fact is not material. What is also not material is the name calling and the unsubstantiated allegations that led both sides to call the police on the other before Forsythe and Brady ultimately sought court intervention.

and was valid until November 5, 2019. The order included a provision that Steven "not video record either Petitioner [or] Dennis Cahoy when they are on their own property".

On May 6, 2019, Brady filed an emergency order of protection against Steven, her brother, in Lawrence County, Illinois cause number 19-OP-70. On June 6, 2019, the court entered an interim order of protection to be in place for 90 days, or until October 17, 2019. This order also included a provision wherein Steven could not record Brady while she was on her property. On October 17, 2019, the interim order was extended until January 17, 2020.

On June 7, 2019, Rotman responded to a law enforcement service call by Alicia[4]. On August 16, 2019, Rotman responded to a law enforcement service call by Forsythe, who complained that Steven was video-recording her while she was on her own property in violation of an order of protection. Rotman saw cameras on Steven's residence and was advised that the no stalking/no contact order contained the no video recording provision.

On August 19, 2019, Rotman sought and obtained a search warrant issued by an Illinois state court judge. On August 20, 2019, Rotman and Masterson executed the search warrant at the 11072 Stoltz Boulevard residence while Adams and White provided additional security outside the home.

Officers located and seized a Master Mag 12 gauge Model: CC660, serial no. H702335, and a Mossberg model 9200 shotgun barrel while executing the search warrant. Steven has a 2018 conviction for a misdemeanor crime of domestic battery and

---

[4] Alicia complained that Brady had thrown dog feces over the fence; however, upon questioning, she admitted that she did not witness who threw the feces.

did not possess an Illinois FOID on the day the officers executed the search warrant. Alicia did not possess an Illinois FOID on the day the officers executed the search warrant.

In addition to the Master Mag and Mossberg items, officers also seized three cameras and a cellphone. Steven owned the cell phone. Donna owned the three cameras, shotgun, and shotgun barrel. Officers did not seize any property that belonged to Alicia.

After the search warrant was executed, Steven was arrested, taken to jail for booking, and released approximately one hour later when Alicia posted his bond. Steven did not recall pleading guilty to violating an order of protection - a criminal charge that arose from the search warrant, but court records show that he did.

The seized items were subsequently returned on May 3, 2023.

## LEGAL STANDARD

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055 (7th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); s*ee Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Stated another way, the nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003) *(citing Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871 (1990)).

In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.,* 275 F.3d 654 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). However, no issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party". *See Faas v. Sears, Roebuck & Co.*, 532 F.3d 633 (7th Cir. 2008). The nonmovant cannot simply rely on its pleadings; the nonmovant must present admissible evidence that sufficiently shows the existence of each element of its case on which it will bear the burden of proof at trial. *Midwest Imports, Ltd. v. Coval,* 71 F.3d 1311 (7th Cir. 1995) (*citing Serfecz v. Jewel Food Stores*, 67 F.3d 591 (7th Cir. 1995); *Greater Rockford Energy and Technology Corp. v. Shell Oil Co.,* 998 F.2d 391 (7th Cir. 1993)).

## ANALYSIS

Count V of the amended complaint alleges the claim of abuse of process while count VI of the amended complaint alleges intentional infliction of emotional distress (Doc. 61). Additionally, although there is no separate tort of civil conspiracy, plaintiffs asserted in Count V that defendants herein "entered into an unlawful conspiracy with a goal to harass [them] and force [them] to move out of the neighborhood" (Doc. 61, ¶74). Said paragraph was also incorporated by reference into Count VI where plaintiffs also asserted that defendants "individually and as a group, decided to force and intimidate [them] to move out of the neighborhood and to knowingly cause several emotional distress to Steven" (Doc. 61, ¶¶82, 83).

I. **Abuse of Process**

A. **Law**

The tort of abuse of process is very narrow and the elements are strictly construed. See *Commerce Bank v. Plotkin,* 627 N.E.2d 746 (Ill.App.Ct.1994). Moreover, the tort is not favored under Illinois law. *Kumar v. Bornstein,* 820 N.E.2d 1167 (Ill.App.Ct. 2004).

Under Illinois law, an abuse of process claim requires proof of two elements: (1) the existence of an ulterior motive or purpose; and, (2) some act in the use of legal process not proper in the regular prosecution of the proceedings. *Podolsky v. Alma Energy Corp.,* 143 F.3d 364, 372 (7th Cir. 1998) (citing *Kirchner v. Greene*, 691 N.E.2d 107, 116 (Ill.App.Ct. 1988). Simply stated, abuse of process is defined as the misuse of the legal process to accomplish some purpose outside the scope of the process itself. *Bonney v. King,* 66 N.E.2d 377, 378 (Ill. 1903). Indeed, it is the settled law of Illinois that mere institution of a suit or proceeding, even with a malicious intent or motive, does not itself constitute an abuse of process. *Id.*

Additionally, because plaintiffs alleged the parties acted as a group, to succeed on the theory of civil conspiracy under Illinois law, a plaintiff must prove two things: (1) an agreement between two or more persons for the purpose of accomplishing with an unlawful purpose or a lawful purpose by unlawful means; and, (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff, *See Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (citing *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999)).

"The agreement is a necessary and important element of this cause of action." *Id.* "A defendant who innocently performs an act which happens to fortuitously further the tortious purpose of another is not liable under the theory of civil conspiracy." *Adcock v. Brakegate,* 645 N.E.2d 888, 894 (Ill.1994). In other words, a defendant may be liable as a co-conspirator where he "understands the general objectives of the conspiratorial scheme, accepts them, and agrees, either explicitly or implicitly, to do his or her part to further those objectives" or "knowingly agrees with another to commit an unlawful act or a lawful act in an unlawful manner, whether such tortious act is intentional or negligent in nature". *Id.*

### B. Statute of Limitations

The statute of limitations for Illinois abuse of process claims is two years and commences to run from the date that the last act giving rise to the cause of action has accrued. See *Withall v. Cap. Fed. Savs. of Am.*, 508 N.E.2d 363, 367–68 (Ill.App. Ct.1987). Brady, Buchanan, Forsythe, and Kensler incorporated the arguments made by one another in their motions for summary judgment, including raising the applicable statute of limitations. As such, before determining whether plaintiffs have stated a cause of action for abuse of process, this Court must first determine whether any such claim is timely.

Plaintiffs filed their complaint on August 19, 2021(Doc 1). In the amended complaint, plaintiffs refer to incidents that occurred in 2018, winter-spring 2019, as well as June 2019 (Doc. 61, ¶¶ 18-40). It is irrelevant and immaterial that plaintiffs later amended their pleading on February 1, 2022 (Doc. 61). As such, any actions that occurred before August 19, 2019 were outside the statute of limitations.

Brady filed (and received) an emergency order of protection on May 6, 2019. On that same date, summons was issued for Steven by Lawrence County and court records indicate the summons was returned on May 7, 2019.[5]

This Court is well aware that pleadings are distinguished from process. Pleadings are created and filed by the litigants. *Holiday Magic, Inc. v. Scott,* 282 N.E.2d 452, 457 (Ill.App.Ct.1972). Obviously, the emergency order of protection that was filed by Brady was nothing more than a pleading. To the contrary, "[p]rocess is issued by the court, under its official seal." *Commerce Bank, N.A. v. Plotkin,* 627 N.E.2d 746, 749 (Ill.App.Ct.1994). "Process" in an abuse of process claim is not used in the general sense—as in "the legal process" of suing someone, prosecuting the case, receiving judgment, etc., rather it is used in the literal, legal sense of something issued by the court. *Id.*

A summons is issued in just about every case in which a lawsuit is filed and the intended purpose of a summons is to establish a court's *in personam* jurisdiction over a person. See *Coyne v. OSF Healthcare System,* 773 N.E.2d 732 (Ill.App.Ct. 2002). The issuance of a summons can be categorized as process. *McCrery,* 509 N.E.2d 122.

Plaintiffs conceded that the process was served on May 7, 2019[6]; however, they purported to argue that since Steven appeared in court on three separate occasions – 5/23/2019, 6/16/19, and 10/17/2019 – damages did not manifest until later. In fact, plaintiffs argued that abuse of process is subject to the continuing violation doctrine.

---

[5] See https://judici.com (last visited October 31, 2023).

[6] In their response, plaintiffs state, "In Lawrence County 19-OP-70, process was served on 5/7/19." (Doc. 61, p. 3).

Illinois courts have occasionally determined, in cases involving a continuing or repeated injury, that the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease. *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 85 (Ill. 2003). However, where a single overt action, rather than a series of acts, produces continued ill effects or injury, the statute of limitations begins to run at the time the single overt action occurred. *Id.*

It is a question of law, not fact, whether the limitations period is subject to tolling under the "continuing violation doctrine". See *Woods v. Cole,* 693 N.E.2d 333 (Ill.1998). Given the strict and narrow construction of the tort of abuse of process, as well as the necessity of "some act in the use of legal process", this Court declines to adopt the continuing violation to the tort of abuse of process. Process was completed on May 7, 2019; therefore, any cause of action for an abuse of said process should have been filed on or before May 7, 2021.

In light of the foregoing, summary judgment is appropriate as to count V of plaintiffs' amended complaint. There is no dispute that the cause of action for an abuse of process claim is 2 years. There is also no dispute that plaintiffs were aware of Brady's alleged conduct, or of their purported injury, prior to May 7, 2021 as plaintiffs refer to a multitude of incidents that occurred prior to the filing and service of process in the Order of Protection.

### C. Discussion

Assuming arguendo that the continuing violation applies and this matter is not barred by the statute of limitations does not change the outcome. Summary judgment

is proper as to the abuse of process claim as plaintiffs have not submitted evidence to support each element of the cause of action. Rule 56(e); *Celotex Corp.,* 477 U.S. 317.

As set forth *infra*, to prevail on an abuse of process claim, Steven, Alicia and Donna must establish the existence of both "an ulterior purpose or motive for the use of regular court process," and "an act in the use of process not proper in the regular prosecution of a suit." *See Evans v. West,* 935 F.2d 922 (7th Cir. 1991). Plaintiffs claim there are material facts in dispute that preclude summary judgment; however, they do not point to any evidence to support their claim of abuse of process.

The first element [of an abuse of process claim] requires allegations that show that the defendant instituted proceedings against [plaintiff] for an improper purpose, such as extortion, intimidation, or embarrassment. *Community National Bank in Monmouth v. McCrery,* 509 N.E.2d 122 (Ill.App.Ct. 1987). In fact, the usual case of abuse of process is one of some form of extortion, using the process to put pressure on someone to compel him to pay a different debt or to take or refrain from taking some other action. *Id.,* citing Restatement (Second) of Torts, § 682 (1977).

There is not one scintilla of evidence that Brady filed for an order of protection for anything other than its actual purpose – to obtain an order of protection against Steven. Moreover, there is no doubt that there was a complete breakdown in the sibling and neighborly relationship between Steven and Brady at the time the OP was sought, and that it was not just one-sided. However, none of the acts cited by either party raise a genuine issue of material fact. Indeed, there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that

party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.*

Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Logan v. Commercial Union Ins. Co.,* 96 F.3d, 971, 978 (7th Cir. 1996). Plaintiffs dwell on semantics and trivialities, but it is immaterial if a pipe was a hose, or vice versa. It is also irrelevant that Brady assisted Steven in purchasing the home on Stoltz Road. As for Brady's Facebook posts[7], this Court is constrained to note that Brady has a First Amendment right to express her opinion under the Constitution. While it is true that Brady stated she wanted Steven to move, plaintiffs took that statement and jumped to the conclusion that she had formed a plan to drive Steven out of the neighborhood. Where is the evidence to support this plan? Steven did not receive any documents telling him to move nor were any of the women on his property after October 2018. Instead, Steven continuously spews that "the hateful women"[8] worked together to "harass him" and get him to move.

In order to satisfy the second element, the plaintiff must plead facts that show a misapplication of process, or, in other words, the plaintiff must show that the process was used to accomplish some result that is beyond the purview of the process. *Kumar,* 820 N.E.2d at 1173. The test for sufficiency of the allegations pertaining to the second element is whether the process has been used to accomplish some result which is beyond

---

[7] One Facebook post stated, "I know Anne. I'm just tired of his shit, if it's not one thing its another. I'm over it. He just needs to move!"

[8] In his deposition, Steven identifies Brady, Forsythe, Buchanan, and Kensler as "hateful women". He also indicated they were harassing him.

the purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally be compelled to do.

In this case, Brady filed for an order of protection and process was served on Steven. Said process ordered his appearance in court. That is what is meant to happen. There is not one fact that supports a conclusion that Brady sought the Order of Protection to get Steven to move. It did not compel him to sell his home. When process is used only for its intended purpose, there has been no misapplication of process. *Neurosurgery & Spine Surgery, S.C. v. Goldman,* 790 N.E.2d 925, 930 (Ill. App. Ct., 2003) (internal citations omitted). Again, "[t]he mere use of process by itself is not tortious. To constitute an abuse of the process in the legal sense, there must be some act in the use of the process which is not proper in the regular course of the proceedings." *Holiday Magic,* 282 N.E.2d at 457.

If possible, plaintiffs' attempts to bootstrap the abuse of process claim into a civil conspiracy where Brady, Buchanan, Forsythe, and Kensler are liable as co-conspirators are even more ridiculous. Plaintiffs boldly claimed that there was a meeting of the minds between the women, but again, there is no evidence.

A conspiracy is almost never susceptible to direct proof. *Walsh v. Fanslow,* 462 N.E.2d 965 (Ill.App.Ct., 1984). Instead, a conspiracy is usually established "from circumstantial evidence and inferences drawn from evidence, coupled with common-sense knowledge of the behavior of persons in similar circumstances." *Adcock, 645 N.E.2d 888*. However, if a civil conspiracy is shown by circumstantial evidence, it must be clear and convincing. McClure, 720 N.E.2d at 258. The fact that Brady, Buchanan,

and Kensler are sisters, and the fact that Brady, Buchanan, Kensler, and Forsythe, spoke to each other is simply not enough.

This Court has thoroughly reviewed the deposition testimony and Steven himself admitted to having no facts to support his thoughts nor any facts to support most of the allegations contained in the amended complaint[9]. When asked about it, he said, "I believe it was a meeting of the minds. They work together very good." (Doc. 104-1, p. 193:20-21). Steven's deposition transcript also contains conclusory statements: "They were harassing me." (Doc. 104-1, p. 67:17), and "I was just being harassed and bullied and hated" (Doc. 104-1, p. 67:21-21), admissions: "I called her [Brady] a dumb ass …" (Doc. 104-1, p. 119:23), and "I remember videoing her …" (Doc. 104-1, p. 122:22), as well as several unsubstantiated statements about the defendants herein. When asked about Brady, he said "She's crazy." (Doc. 104-1, p. 180:16), "I believe she is possessed [with] … imps, devils, whatever triggers her" (Doc. 104-1, p. 180:18-22), and "She's unhinged. She's out there." (Doc. 104-1, p. 181:7). He also believed Karen and Brenda were possessed and called Brenda an alcoholic. (See Doc. 104-1, p. 181).

For summary judgment, "[i]nferences and opinions must be grounded on more than flights of fancy, speculation, hunches, intuitions, or rumors." *Bennington v. Caterpillar Inc.,* 275 F.3d 654, 658 (7th Cir. 2001). Because plaintiffs responses to the motions contained nothing more than speculation and conclusory allegations, summary judgment is appropriate as to Count V of the amended complaint. Additionally, because

---

[9] The deposition of Steven Lockhart was taken on September 20-21, 2022 and was attached as an Exhibit to several of the Motions for Summary Judgment. For clarity, this Court has cited to the deposition as Document 104-1.

there was no process associated with Alicia or Donna, there is no question that neither can present a claim for abuse of process claim.

## II. **Intentional Infliction of Emotional Distress**

### A. Law

To successfully assert a claim for intentional infliction of emotional distress ("IIED"), requires the clearing of "the high bar set by Illinois case law for that type of claim." *Richards v. U.S. Steel*, 869 F.3d 557, 566 (7th Cir. 2017). In 1961, the Illinois Supreme Court recognized the intentional causing of severe emotional distress as a separate and additional tort. *Knierem v. Izzo,* 174 N.E.2d 157 (Ill., 1961). Approximately fifteen years later, relying upon Restatement (Second) of Torts § 46 (1965)), the Court outlined the requirements for the tort. *See Public Finance Corp. v. Davis*, 360 N.E.2d 765 (Ill., 1976). "First, the conduct involved must be truly extreme and outrageous. Second, the actor must either intend that his conduct inflict severe emotional distress or know that there is at least a high probability that his conduct will cause severe emotional distress. Third, the conduct must in fact cause severe emotional distress." *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill., 1988) (citing *Public Finance*, 360 N.E.2d at 767).

"The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and duration of the distress are factors to be considered in determining its severity." *McGrath,* 533 N.E.2d at 809 (citing Restatement (Second) of Torts § 46, comment *j,* at 77–78 (1965)).

B. Discussion

Defendants move for summary judgment as to Count VI and claim that plaintiffs have not established the claim of IIED. Because a defendant moving for summary judgment may satisfy its burden by pointing to a plaintiff's failure to introduce sufficient evidence to support each essential element of the cause of action alleged, an analysis is necessary of the three elements of intentional infliction of emotional distress. *Celotex,* 477 U.S. at 323–24. During this assessment, the Court is mindful that plaintiffs "may not rest upon mere allegations or denials," but rather must introduce affidavits or other evidence to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

1. **Extreme and Outrageous Conduct**

The first prong of this test is whether the conduct alleged is extreme and outrageous. Conduct is extreme and outrageous only if "the conduct has been so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency...." *Harriston v. Chicago Tribune Co.,* 992 F.2d 697, 702 (7th Cir.1993) (quoting *Public Fin. Corp. v. Davis,* 360 N.E.2d 765, 767 (Ill.1976)). "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not amount to extreme and outrageous conduct, nor does conduct "characterized by malice or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Public Fin. Corp.,* 360 N.E.2d at 767. Moreover, we judge whether conduct is extreme and outrageous on an objective standard based on all the facts and circumstances of a particular case. *Harriston,* 992 F.2d at 703; *McGrath,* 533 N.E.2d at 811. Thus, to serve as a basis for recovery, the defendant's conduct must be such that

the "recitation of facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim 'Outrageous!' " *Doe v. Calumet City,* 641 N.E.2d 498, 507 (Ill.1994) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

Whether particular conduct is extreme and outrageous is treated as a question of law and is a legal, not a factual, standard. See *id.* (holding the trial court's dismissal of the plaintiff's complaint was proper where the conduct alleged could not be characterized as "extreme and outrageous"); see also *Thomas v. Fuerst,* 803 N.E.2d 619, 625 (Ill.App.Ct. 2004) ("Whether conduct is extreme and outrageous is evaluated on an objective standard based on all of the facts and circumstances.").

Illinois courts have identified some factors to consider when analyzing this prong. First, the degree of power or authority which a defendant has over a plaintiff can impact whether that defendant's conduct is outrageous because the more control a defendant has over the plaintiff, the more likely that defendant's conduct will be deemed outrageous. *McGrath,* 533 N.E.2d at 809–10. While three of the defendants are Steven's sisters, they do not have any control over him so this is negligible.

Second, whether the defendant reasonably believed that his objective was legitimate because greater latitude is given to a defendant pursuing a reasonable objective even if that pursuit results in some amount of distress for a plaintiff. *See McGrath,* 533 N.E.2d at 810. In this case, Brady used derogatory statements and posted her opinions on Facebook. She also sought, and obtained, an Order of Protection. Kensler, another sister, also expressed her opinion on him. None of these factors are particularly outrageous.

An additional consideration in determining whether extreme and outrageous behavior exists is whether the plaintiff is particularly susceptible to emotional distress because of some physical or mental condition or peculiarity because behavior that otherwise might be considered merely rude, abrasive or inconsiderate may be deemed outrageous if the defendant knows that the plaintiff is particularly susceptible to emotional turmoil. *See McGrath,* 533 N.E.2d at 811–12 (defendants knew plaintiff was suffering from heart disease); *Pavilon v. Kaferly*, 561 N.E.2d 1245, 1252 (Ill.App.Ct. 1990) (defendant knew plaintiff was undergoing psychotherapy).

Yes, Brady, Kensler, and Buchanan are Steven's sisters and knew about the heart surgery he underwent ten years prior, and Brady and Buchanan are registered nurses, but none of them had knowledge of his mental health. This Court is not inclined to impute a heightened level of knowledge as Steven indicated he kept to himself. Additionally, at some point between Steven's surgery and the filing of the OP, there was a complete breakdown of the relationship between Steven and Donna, especially if Donna did assist Steven in relocating to Stoltz Drive. The Facebook posts were hateful, but just opinions. The name calling was insulting and possibly hateful, but not so extreme as to go "beyond all possible bounds of decency so as to be regarded as intolerable in a civil society." See *Taliani v. Resurreccion*, 115 N.E.2d 1245, 1254 (Ill.App.Ct. 2018). Because no reasonable jury could find that any of these defendants engaged in extreme and outrageous conduct, summary judgment is appropriate with respect to Count VI of plaintiffs' complaint. As such, there is no need to delve into the second and third elements of this claim.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Motions for Summary Judgment filed by Defendants herein, Diane Brady, Karen Kensler, Billie Forsythe, and Brenda Buchanan, and dismisses Counts V and VI of plaintiffs' amended complaint. As there remain no counts against these defendants, they shall be terminated as parties herein. At the end of this case, the Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: November 2, 2023**

> */s/ Stephen P. McGlynn*
> **STEPHEN P. McGLYNN**
> **U.S. District Judge**