IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVEN P. LOCKHART, ALICIA LOCKHART, and DONNA LOCKHART,<br><br>                 Plaintiffs,<br><br>v.<br><br>RUSSELL ADAMS, ANDREW ROTMAN, TRENTON MASTERSON, JAMES WHITE, DIANE BRADY, KAREN KENSLER, BILLIE FORSYTHE, BRENDA BUCHANAN, CITY OF LAWRENCEVILLE, ILLINOIS, a municipal corporation, and LAWRENCE COUNTY, ILLINOIS<br><br>                 Defendants. | Case no. 21-cv-1033-SPM |

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court is a Motion for Summary Judgment[1] (Doc. 102) filed by Defendant James White ("White"). For the reason's set forth below, the Court **GRANTS** the Motion for Summary Judgment.

### PROCEDURAL HISTORY

On August 19, 2021, plaintiffs Steven P. Lockhart ("Steven"), Alicia Lockhart ("Alicia"), and Donna Lockhart ("Donna"), filed their initial complaint against White, along with Russell Adams, Andrew Rotman ("Rotman"), Trenton Masterson ("Masterson"), Lawrence County, Illinois, Diane Brady ("Brady"), Karen Kensler

---

[1] Contemporaneously with the motion, White filed a memorandum of law in support of said motion (Doc. 103).

("Kensler"), Brenda Buchanan ("Buchanan"), and Billie Forsythe ("Forsythe") (Doc. 1). This Complaint was stricken, and on August 20, 2021, the complaint was refiled correctly (Doc. 4).

On December 29, 2021, this case was assigned CJRA Track C, with the jury trial date presumptively set in May of 2023 (Doc. 50). On January 21, 2022, a scheduling Order was entered, providing a discovery deadline of December 22, 2022 with a dispositive motion deadline of January 20, 2023 (Doc. 60). These dates were extended at the request of the parties with the ultimate discovery deadline being July and dispositive motion deadline being August 1, 2023. Ultimately, the final pretrial conference was continued to November 6, 2023 with the jury trial scheduled to commence on November 14, 2023.

On February 1, 2022, plaintiffs filed a six-count amended complaint against defendants herein (Doc. 61). The following counts were asserted in the amended complaint:

(I) All plaintiffs allege violation of civil rights under 42 U.S.C. §1983 against Rotman;

(II) All plaintiffs allege violation of civil rights under 42 U.S.C. §1983 against Masterson;

(III) All plaintiffs allege violation of civil rights under 42 U.S.C. §1983 against Adams;

(IV) All plaintiffs allege violation of civil rights under 42 U.S.C. §1983 against White;

(V) All plaintiff allege abuse of process against Brady, Buchanan, Kensler, and Forsythe, individually and as a group; and,

(VI) All plaintiffs allege intentional infliction of emotional distress against Brady, Buchanan, Kensler, and Forsythe, individually and as a group.

On February 4, 2022, White filed his answer to amended complaint (Doc. 63).

On September 30, 2022, the scheduling Order was amended, pushing the discovery deadline to May 10, 2023 and the dispositive motion deadline to July 10, 2023 (d/e 81, 82). At that time, the presumptive trial setting was also pushed from May to November of 2023 (*Id.*). The dispositive motion deadline was later extended to August 1, 2023 (d/e 92).

On July 26, 2023, White filed his motion for summary judgment and supporting memorandum of law (Docs. 102-103). Within his motion, White first argued that Donna could not maintain any claim against him under 42 U.S.C. §1983 as she was not present when the search warrant was executed[2]. White next argued that neither Steven nor Alicia could maintain a cause of action against him. White alternatively argued that he was entitled to qualified immunity.

Pursuant to a valid extension of time, plaintiffs filed their response to the afore-mentioned motion for summary judgment on October 16, 2023 (Doc. 134). Also on October 16, 2023, White filed a motion for leave to amend his answer to the amended complaint as White's prior amended answer was inadvertently insufficient because plaintiffs had not complied with local rules (Doc. 141). Accordingly, leave was granted and White filed an amended answer on October 17, 2023 (Doc. 143).

On October 18, 2023, plaintiffs filed an amended response to White's motion for summary judgment, arguing that there were facts in dispute that precluded summary

---

[2] The Court will disregard this argument. Although Count IV was purportedly brought by all plaintiffs, the response to the motion clarifies that the "factual allegations related to the execution of the search warrant on August 19, 2019 unequivocally name only Steven Lockhart and Alicia Lockhart as the plaintiffs who were subjected to unreasonable force during the seizure" (Doc. 144, p. 2).

judgment (Doc. 144). Plaintiffs also contended that White should not be entitled to qualified immunity.

This matter is now ripe for review.

## STATEMENT OF FACTS[3]

Steven previously owned and lived at a home located at 11072 Stoltz Boulevard, Lawrenceville, IL.[4] Alicia, Steven's daughter, lived at the Stoltz Boulevard residence, at times with Steven and at times with her boyfriend. Donna, Steven's ex-wife and Alicia's mother, worked as a travelling nurse and resided in Robinson, Illinois, but sometimes slept at the Stoltz Boulevard residence.

On November 5, 2018, Forsythe obtained a plenary stalking/no contact order against Steven that was issued in Lawrence County, Illinois, cause number 18-OP-153, and was valid until November 5, 2019. The order included a provision that Steven "not video record either Petitioner [or] Dennis Cahoy when they are on their own property".

On May 6, 2019, Brady filed an emergency order of protection against Steven, her brother, in Lawrence County, Illinois cause number 19-OP-70. On June 6, 2019, the court entered an interim order of protection to be in place for 90 days, or until October 17, 2019. This order also included a provision wherein Steven could not record Brady

---

[3] In an effort to mete out immaterial and irrelevant facts, this Court has prepared its own Statement of Facts based upon the Statement of Facts provided by the Lawrence County Defendants (Doc. 107, pp. 6-8), along with plaintiffs response to said facts (Doc. 133). Additionally, this Court reviewed the depositions of the parties, as well as the exhibits submitted in this case.

[4] The Court notes that plaintiffs asserted that Brady helped Steven purchase the home; however, that fact is not material. What is also not material is the name calling and the unsubstantiated allegations that led both sides to call the police on the other before Forsythe and Brady ultimately sought court intervention.

while she was on her property. On October 17, 2019, a hearing was held and the interim order was extended until January 17, 2020.

On August 16, 2019, Rotman responded to a law enforcement service call by Forsythe. On August 19, 2019, Rotman sought and obtained a search warrant issued by an Illinois state court judge. On August 20, 2019, Rotman and Masterson executed the search warrant at the 11072 Stoltz Boulevard residence while Adams and White[5] provided additional security outside the home.

Officers located and seized a Master Mag 12 gauge Model: CC660, serial no. H702335, a Mossberg model 9200 shotgun barrel, a cell phone, and various cameras while executing the search warrant.

After the search warrant was executed, Steven was arrested, taken to jail for booking, and released approximately one hour later when Alicia posted his bond. Steven did not recall pleading guilty to violating an order of protection - a criminal charge that arose from the search warrant, but court records show that he did.

The seized items were subsequently returned on May 3, 2023.

## LEGAL STANDARD

Summary judgment is proper when the pleadings and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(c); *Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

---

[5] Defendant James White is the Chief of Police of the City of Lawrenceville, which is located within Lawrence County, Illinois. The only involvement White had with plaintiffs was accompanying Adams, Rotman, and Masterson to the Stoltz Road property, which was not located within city limits, for execution of the warrant.

The movant bears the burden of establishing the absence of a genuine issue as to any material fact and entitlement to judgment as a matter of law. *See Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex*, 477 U.S. at 323). This Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *See Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). *See also Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009) (stating that "we are not required to draw every conceivable inference from the record . . . we draw only reasonable inferences") (internal citations omitted). Summary judgment is also appropriate if a plaintiff cannot make a showing of an essential element of his claim. *See Celotex*, 477 U.S. at 322. While the Court may not "weigh evidence or engage in fact-finding[,]" it must determine if a genuine issue remains for trial. *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007).

In response to a motion for summary judgment, the non-movant may not simply rest on the allegations contained in the pleadings; rather, the non-movant must show through specific evidence that an issue of fact remains on matters for which the nonmovant bears the burden of proof at trial. *See Walker v. Shansky*, 28 F.3d 666, 670–671 (7th Cir. 1994) (citing *Celotex*, 477 U.S. at 324). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party . . . if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250 (citations omitted). *Accord Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996); *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994). In other words, "inferences relying on mere

speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009) (internal citation omitted). *See also Anderson*, 477 U.S. at 252 (finding that "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]"). Instead, the non-moving party must present "definite, competent evidence to rebut the [summary judgment] motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000) (internal citation omitted).

## ANALYSIS

Count IV is brought pursuant to §1983 and is the only count brought against White. Within it, plaintiffs (Steven and Alicia) allege that White violated their right to be free from unreasonable and excessive force, "by failure to intervene in Rotman's and Masterson's pointing of weapons" during the execution of the search warrant (Doc. 61, ¶72a).

### I. Failure to Intervene

Section 1983 creates a species of tort liability for "the deprivation of any rights, privileges, or immunities secured by the United States Constitution. *Imbler v. Pachtman,* 424 U.S. 409, 417 (1976). Section 1983 is not itself a font for substantive rights; instead, it acts as "an instrument for vindicating federal rights conferred elsewhere." *Spiegel v. Rabinovitz,* 121 F.3d 251, 254 (7th Cir.1997). It allows citizens whose constitutional rights have been violated by public officials to sue in their individual capacity. *Fleming v. Livingston County, Ill,* 674 F.3d 874, 878 (7th Cir. 2012).

Generally, liability under § 1983 requires proof of two essential elements: that the conduct complained of (1) "was committed by a person acting under color of state

law" and (2) "deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor,* 451 U.S. 527, 535 (1981), *overruled in part on other grounds by Daniels v. Williams,* 474 U.S. 327, 331–32 (1986). However, under certain circumstances a state actor's failure to intervene renders him or her culpable under § 1983. *Byrd v. Brishke,* 466 F.2d 6 (7th Cir.1972) (under the Civil Rights Act, damages are recoverable both for misfeasance and nonfeasance).

In *Byrd*, a district judge directed a jury verdict[6] against the plaintiff in favor of defendants who were nonsupervisory policemen on the ground that the evidence failed to connect any of them directly with any alleged improper acts. *Id*. On appeal, the Seventh Circuit reversed, holding, "We believe it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in *his presence or otherwise within his knowledge. Id.* at 11 (*emphasis added).* Although the case law has evolved, *Byrd v. Brishke* remains the seminal case in this court on the duty of an officer, supervisory or nonsupervisory, to intervene. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994).

In *Yang,* two officers – Brown and Hardin - were investigating a burglary. Yang, the storeowner, questioned Brown about taking something, which Brown returned and then shoved Yang, who asked for assistance from Hardin, who did nothing. Yang then tried to prevent Brown from leaving, but Brown drove off with Yang hanging on the car while Hardin was in the passenger seat. Again, Hardin did not try to stop Brown or call

---

[6] The standard for summary judgment mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Anderson,* 477 U.S. at 251.

the sergeant. Instead, when they were stopped by two strangers and Yang's brother, who Brown knocked to the ground, Hardin got out of the passenger seat, drew his gun, pointed it at Yang and his brother, and shouted obscenities before getting back in the car and driving off with Brown. The district court found Brown liable under §1983, but granted summary judgment to Officer Harding under §1983, finding him not liable as there was no reasonable time nor the likelihood of success for intervention.

On appeal, the Seventh Circuit reversed, finding that Hardin had several opportunities during which he could have acted. He could have called for backup, called for help, or at least cautioned Brown to stop. Moreover, Hardin had an independent duty to act. In their decision, the Seventh Circuit reiterated *Byrd*'s standard "[a]n officer who is present and fails to intervene to prevent other law enforcement officers from infringing upon the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, **or** (3) that any constitutional violation has been committed by a law enforcement official; **and** the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (emphasis added). In sum, an officer must know that a citizen's rights are being infringed, and he must have a "realistic opportunity" to intervene.

In this case, there is no question that White was present at the Stoltz Road property for execution of the search warrant[7]. There is also no question that he never entered the home. While plaintiffs point out that different persons indicated White was in differing locations outside including the porch, the yard, the driveway, and the street,

---

[7] White was not familiar with Steven and was not involved in obtaining the search warrant.

that is irrelevant to the question of whether White failed to intervene. Instead, this Court must consider if White know that Steven and/or Alicia's rights were in question or did he have a realistic opportunity to intervene?

Steven testified that he did not know White before this incident and that White never stepped foot inside the house on Stoltz Boulevard (Doc. 104-1, p. 125:23 and p. 127:14). Alicia also testified that she had no idea who White was and that he never went inside the house (Doc. 104-1, p. 65:3, p. 69:12). Alicia further testified that she never heard White say anything to her father (Doc. 104-1, p. 68:19-21). White did not even go inside the home to assist in the search (Doc. 104-1, p. 69:12). In fact, Alicia testified that White did nothing to cause her stress, anxiety, or worry. (Doc. 104-1, p. 72: 20-24, p. 73: 1-4).

White had no knowledge of this case or of Steven before tagging along to assist with execution of a purported lawfully obtained search warrant. The first three elements require proof of only one, but plaintiffs cannot sustain this burden. First, there is zero evidence to support that White knew that excessive force was being used, which still remains uncertain. Second, there is zero evidence that Steven was being unjustifiably arrested. Third, there is zero evidence that any constitutional violation occurred, not to mention zero evidence that shows that White had a realistic opportunity to intervene to prevent the harm from occurring. Plaintiffs have simply failed to establish the elements for a claim of failure to intervene.

"Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by another officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude

otherwise." *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) (emphasis omitted) (quoting *Lanigan v. Vill. of East Hazel Crest, Ill.*, 110 F.3d 467, 478 (7th Cir. 1997)). In this case, no reasonable jury could conclude otherwise – White was never inside the home where all of the alleged violations took place. Plaintiffs claim that there was yelling inside that White should have heard and that he should have been able to see what was happening in the home, but there is no evidence that White has x-ray vision or super hearing. Because no reasonable jury could conclude that Chief White had a realistic opportunity to intervene, much less any knowledge that there was a reason to intervene, summary judgment is appropriate as to Count IV.

## II. Qualified Immunity

Notwithstanding the foregoing, White is also entitled to qualified immunity. "The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna,* 577 U.S. 7, 11 (2015) (quoting *Pearson*, 555 U.S. at 231).

In their amended complaint and response, plaintiffs allege that White violated their right to be free from unreasonable and excessive force by failing to intervene. While it is uncontroverted that plaintiffs possess such rights under the Constitution, it has not been determined that White violated said right. To the contrary, this Court has determined that White was not aware of what was happening inside the Stoltz Road residence nor did he have an opportunity or responsibility to intervene.

Whether a reasonable officer could have believed his or her conduct was proper is a question of law for the court to determine. *Hunter v. Bryant,* 502 U.S. 224, 228

(1991). The qualified immunity standard "gives ample room for mistaken judgment" and protects "all but the plainly incompetent or those who knowingly violate the law". *Malley v. Briggs,* 475 U.S. 335, 341 (1986). This accommodation for reasonable error exists because officials should not always err on the side of caution because they fear being sued. *Davis v. Scherer,* 486 U.S. 183, 196 (1984).

White went along as back-up while other officers executed what he presumed was a duly-executed search warrant. He had no reason to believe anything untoward was happening within the residence. Furthermore, plaintiffs have not identified any case from the Supreme Court or Seventh Circuit that squarely governs the specific facts at issue here. Courts uniformly have immunized officers from suit unless "existing precedent 'squarely governs' the specific facts at issue." *Mullenix*, 577 U.S. at 13). Because White had no knowledge his actions, or inaction, may have led to a constitutional violation, he is also entitled to qualified immunity on this claim.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Motion for Summary Judgment filed by Defendant James White (Doc. 102). Count IV of this action is **DISMISSED with prejudice** and the Clerk of Court is **DIRECTED** to terminate White as a party-defendant. Judgment will be entered at the termination of this case.

**IT IS SO ORDERED.**

**DATED: November 6, 2023**

>    */s/ Stephen P. McGlynn*
>    **STEPHEN P. McGLYNN**
>    **U.S. District Judge**