IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVEN P. LOCKHART, ALICIA LOCKHART, AND DONNA LOCKHART,<br><br>Plaintiffs,<br><br>V.<br><br>RUSSELL ADAMS, ANDREW ROTMAN, TRENTON MASTERSON, JAMES WHITE, DIANE BRADY, KAREN KENSLER, BILLIE FORSYTHE, BRENDA BUCHANAN, CITY OF LAWRENCEVILLE, ILLINOIS, a municipal corporation, and LAWRENCE COUNTY, ILLINOIS<br><br>Defendants. | Case No. 21-cv-1033-SPM |

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court is a Partial Motion for Summary Judgment filed by plaintiffs, Steven P. Lockhart ("Steven"), Alicia Lockhart ("Alicia"), and Donna Lockhart ("Donna"), directed towards the allegations against Andrew Rotman ("Rotman"). (Doc. 112). For the reasons set forth below, the Court DENIES this motion in its entirety.

### RELEVANT PROCEDURAL HISTORY

On August 19, 2021, plaintiffs filed their initial complaint against Russell Adams ("Adams"), Rotman, Trenton Masterson ("Masterson"), James White ("White"), Diane Brady ("Brady"), Karen Kensler ("Kensler"), Brenda Buchanan ("Buchanan"), and Billie

Forsythe ("Forsythe")[1]. (Doc. 1). This Complaint was stricken, and on August 20, 2021, the complaint was refiled correctly. (Doc. 4).

On December 29, 2021, this case was assigned CJRA Track C, with the jury trial date presumptively set in May of 2023. (Doc. 50). On January 21, 2022, the Court accepted the parties' proposed scheduling Order that set a discovery deadline of December 22, 2022 and a dispositive motion deadline of January 20, 2023. (Doc. 60).

On February 1, 2022, plaintiffs filed a six-count amended complaint against defendants and asserted the following counts:

(I)   All plaintiffs allege violation of civil rights under 42 U.S.C. §1983 against Rotman;

(II)  All plaintiffs allege violation of civil rights under 42 U.S.C. §1983 against Masterson;

(III) All plaintiffs allege violation of civil rights under 42 U.S.C. §1983 against Adams;

(IV)  All plaintiffs allege violation of civil rights under 42 U.S.C. §1983 against White;

(V)   All plaintiff allege abuse of process against Brady, Buchanan, Kensler, and Forsythe, individually and as a group; and,

(VI)  All plaintiffs allege intentional infliction of emotional distress against Brady, Buchanan, Kensler, and Forsythe, individually and as a group. : (Doc. 61).

On March 2, 2022, the Lawrence County defendants timely filed their answer and affirmative defenses to the amended complaint wherein Counts I-III were directed

---

[1] At the time of the alleged incidents raised in the complaint, Russell Adams was the Sheriff of Lawrence County, Illinois; Andrew Rotman and Trenton Masterson were Deputies with the Lawrence County Sheriff's Department; James White was the Chief of Police of the City of Lawrenceville, Illinois; Diane Brady, Brenda Buchanan, and Karen Kensler were sisters of Steven Lockhart; and, Billie Forsythe was a neighbor of Steven Lockhart.

against Adams, Rotman, and Masterson individually. (Doc. 67). It is important to note; however, that within each of the counts were numerous sub-allegations. (Doc. 61).

At the request of the parties, the scheduling deadlines were extended on multiple occasions, with the discovery deadline ultimately being extended on June 29, 2023 to July 18, 2023. (d/e 100). The final dispositive motion deadline was set on March 22, 2023 for August 1, 2023. (d/e 92). Even before those dates were finalized, on October 3, 2022, the presumptive trial setting had been pushed to November 11, 2023 and the final pretrial conference was set on October 30, 2023. (d/e 82).

On August 1, 2023, plaintiffs filed a motion for partial summary judgment, along with supporting memorandum of law. (Docs. 112-113). The motion was specifically directed against Rotman and only concerned the allegations contained in count I(a) of the amended complaint, which alleged that Rotman violated their rights to a particularized warrant under 42 U.S.C. §1983 (Doc. 112).

On August 14, 2023, this Court granted an extension of time and set forth a briefing schedule for all pending dispositive motions[2]. (d/e 124). Accordingly, on October 16, 2023, Rotman filed his response in opposition to plaintiffs' partial motion for summary judgment. (Doc. 138). No reply was received from plaintiffs before the October 30, 2023 deadline. As such, this motion is ripe for review.

## STATEMENT OF FACTS

---

[2] In addition to the partial motion for summary judgment filed by plaintiffs, each defendant also filed a motion for summary judgment.

The Court has reviewed the material facts asserted by plaintiffs as well as Rotman's response to those facts. In an effort to exclude immaterial and irrelevant facts, this Court has prepared its own Statement of Facts based upon the briefs provided by the parties herein, including any attached exhibits and/or depositions.

On August 16, 2019, Rotman was dispatched to 10028 Stoltz Boulevard[3], Lawrenceville, IL to speak with defendant Billie Forsythe and Dennis Cahoy, who complained that Steven was using his cell phone to video-record them, which was in violation of a Stalking/No Contact Order in Lawrence County Case 18-OP-153. As he was approaching the Stoltz Addition, Rotman observed Steven heading west on Highway 250, but did not stop him.

While speaking with Forsythe and Cahoy about their complaint, Rotman observed two cameras that were mounted outside the Lockhart residence – one was facing the Cahoy property and the other was facing defendant Diane Brady's property. Cahoy told Rotman that he believed Steven went to his camper along the Embarras River near Dodge City. Rotman gave Cahoy and Forsythe forms to fill out and drove out to the Dodge City Campground in an attempt to locate Steven. Rotman then returned to the Stoltz Addition and collected the voluntary statements from Cahoy and Forsythe.

As part of his investigation, Rotman reviewed the stalking/no contact Order in Lawrence County case 18-OP-153 that was issued on 11/5/2018 and was in effect until 11/5/2019 that indicated Steven shall not video record Forsythe or Cahoy while on their own property. He also reviewed the Order of Protection issued in Lawrence County case

---

[3] Although this address is in Lawrenceville, Illinois, it is outside city limits; therefore, its jurisdiction is within the Sheriff's Department of Lawrence County, Illinois.

19-OP-70 that was issued on 6/6/2019 and was in effect until 10/17/2019 that indicated Steven shall not videotape Brady while she is on her own property.

Based upon the totality of the circumstances, Rotman had probable cause to search for photos or videos between the dates of November 5, 2018 to August 19, 2019, which was the date the warrant was issued. Rotman had spoken with Cahoy and Forsythe, observed cameras pointed from Steven's residence towards the residences of Cahoy, Forsythe, and Brady, and reviewed the court orders in 18-OP-153 and 19-OP-70. Steven was the only one prohibited in the orders from taking photos or videos and Rotman did not know who had mounted the cameras or what, if anything, they were recording.

Rotman prepared the paperwork for the warrant without assistance by using a form on the computer at the Lawrence County Sheriff's Office. Rotman did not show the warrant to Sheriff Adams or Deputy Masterson for approval, but he did have it reviewed by the Lawrence County State's Attorney, Michael Strange, before he presented to a judge. Strange remembered checking the orders because Orders of Protection do not typically contain a no video condition.

On August 19, 2019, Rotman took the 6-page Lawrence County Search Warrant to Judge Hopkins, who signed the warrant. Rotman did not recall if Judge Hopkins asked him any questions about the warrant.

Rotman also prepared the Return of Search Warrant that contained the wrong officer's name and date. Rotman presented the return to Judge Hopkins on August 21, 2019 and swore the matters within were true. The name and date were wrong in one area of the return, but other paragraphs correctly identified Rotman and the correct

date of return. Rotman forgot to change the name and did not recall if Judge Hopkins questioned him about the "clerical errors" or asked him to change it. Rotman does not think anyone noticed the errors.

On August 20, 2019, the Lockhart residence was searched pursuant to the 8/19/19 warrant. During execution, Rotman asked Steven where his cell phone was. When told it was in his truck, Rotman then located and collected it as evidence. While on scene, Rotman viewed photographs and videos on Steven's cell phone dated 8/16/19 that depicted Forsythe, and then he arrested him.

After the search, Rotman opened up Steven's cell phone and accessed its contents before downloading onto a computer at the jail for evidence. Rotman downloaded 169 files from Steven's cell phone. He did not share all of the files as evidence, but he did disclose the files as discovery in this lawsuit. No photographs from before 11/5/18 were evidence of violations of the stalking/no contact order entered on 11/5/18. No photographs from before 6/6/19 were evidence of violations of the order of protection entered on 6/6/19.

Rotman did not seek another search warrant prior to conducting a full search of Steven's cell phone. Rotman did not obtain written consent from Steven prior to downloading photographs of his daughter, his financial documents, and his personal medication information. Rotman did not consult with the State's Attorney, sheriff, or supervising officer, or review any HIPAA or federal privacy laws before downloading the images from the seized cell phone.

## LEGAL STANDARD

### I. Summary Judgment

Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material only if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Disputes over unnecessary or irrelevant facts will not preclude summary judgment. *Id.* Further, a factual issue is genuine only if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *Id.* A court's role in summary judgment is not to "weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Id.* at 249.

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); s*ee Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Stated another way, the nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003) *(citing Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871 (1990)).

This notion applies equally where, as here, opposing parties each move for summary judgment in their favor pursuant to Rule 56. *I.E.A., Inc. v. Shaver,* 74 F.3d 768, 774 (7th Cir. 1996). Indeed, the existence of cross-motions for summary judgment does not necessarily mean that there are no genuine issues of material fact. *R.J. Corman*

*Derailment Serv., Inc. v. Int'l Union of Operating Eng'rs*, 335 F.3d 643, 647 (7th Cir. 2003). Rather, the process of taking the facts in the light most favorable to the non-movant, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the court's] review of the record requires that [the court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

## II.     42 U.S.C. § 1983

Section 1983 creates a species of tort liability for "the deprivation of any rights, privileges, or immunities secured by the United States Constitution. *Imbler v. Pachtman,* 424 U.S. 409, 417 (1976). It allows citizens whose constitutional rights have been violated by public officials to sue in their individual capacity. *Fleming v. Livingston County, Ill,* 674 F.3d 874, 878 (7th Cir. 2012). Section 1983 is not itself a font for substantive rights; instead it acts as an instrument for vindicating federal rights conferred elsewhere." *Spiegel v. Rabinovitz,* 121 F.3d 251, 254 (7th Cir.1997).

## ANALYSIS

Plaintiffs move for partial summary judgment against Rotman for violating the Fourth Amendment warrant requirements (Doc. 112). Specifically, plaintiffs' allegations in the amended complaint are as follows:

> "66.   As a result of his unlawful, malicious, unreasonable, reckless and/or indifferent conduct, Defendant Andrew Rotman acted under color of law but contrary to law, and did deprive Plaintiffs of their rights, privileges or immunities secured under the constitution and laws of the United States and 42 U.S.C. §1983, including:

      a. Their rights to a particularized warrant, which is required to protect persons against the wide-ranging exploratory searches the Framers intended to prohibit and the government's indiscriminate rummaging through their property, their cell phones and other electronic devices and to prevent the searching for and seizure of items that there is no probable cause to believe are either contraband or evidence of a crime, in violation of Amendment IV". (Doc. 61, ¶ 66a).

### A.   Law

The Fourth Amendment provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV.

The Fourth Amendment expressly imposes two requirements. *Kentucky v. King,* 563 N.E.2d 452, 459 (2011). First, all searches and seizures must be reasonable. Second, a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity. *See Payton v. New York,* 445 U.S. 573, 584 (1980).

#### 1.  Reasonable

The touchstone of the Fourth Amendment is reasonableness. *Lange v. California,* —— U.S. ——, 141 S. Ct. 2011, 2017 (2021). When law enforcement is attempting to discover evidence of criminal wrongdoing, "reasonableness generally requires the officer to obtain a judicial warrant." *Vernonia Sch. Dist. 47J v. Acton,* 515 U.S. 646, 653 (1995). A warrant ensures that the inferences to support a search are "drawn by a neutral and detached magistrate instead of being judged by the officer

engaged in the often competitive enterprise of ferreting out crime." *Riley v. California*, 573 U.S. 373, 382 (2014).

A search does not need to be the least intrusive alternative to be constitutionally valid, it simply has to be reasonable. *Shell v. United States,* 448 F.3d 951, 956 (7th Cir.2006). To determine reasonableness under the Fourth Amendment, courts balance the degree of the intrusion on the individual's privacy interests against the government's need for the search. *Shell,* 448 F.3d at 956.

### 2. Probable Cause and Particularity

In determining whether there is probable cause to issue a search warrant, the judge's task is "to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Butler*, 71 F.3d 243, 248–49 (7th Cir. 1995) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983) ). Furthermore, the Seventh Circuit Court of Appeals has held that the standard of review of a determination that probable cause exists supporting issuance of a search warrant is "one of affirmance absent clear error by the issuing magistrate." *United States v. Pless*, 982 F.2d 1118, 1124 (7th Cir. 1992). Indeed, "[a] magistrate's determination of probable cause 'is to be given considerable weight and should be overruled only when the supporting affidavit, read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated.'" *United States v. Newsom*, 402 F.3d

780, 782 (7th Cir. 2005) (quoting *United States v. Spry*, 190 F.3d 829, 835 (7th Cir. 1999) ).

A search warrant affidavit establishes probable cause when "considering the totality of the circumstances, there is sufficient evidence to cause a reasonably prudent person to believe that a search will uncover evidence of a crime." *United States v. Harris*, 464 F.3d 733, 737 (7th Cir. 2006). "Probable cause denotes more than a mere suspicion but does not require certainty." *United States v. Fleischli*, 305 F.3d 643, 651 (7th Cir. 2002). Moreover, "[P]robable cause does not require direct evidence linking a crime to a particular place". *United States v. Yarber,* 915 F.3d 1103, 1105 (7th Cir. 2019). Instead, probable cause "turn[s] on the assessment of probabilities in particular factual contexts." *Illinois v. Gates*, 462 U.S. 213, 232 (1983); *see also United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006) ("Probable cause requires only a probability or substantial chance that evidence may be found ...."). Additionally, a police's officer's probable cause determination depends on the elements of the applicable criminal statute, *Stokes v. Board of Education of the City of Chicago,* 599 F.3d 618 (7t Cir. 2010), which in this case involved the Illinois misdemeanor offenses of violation of a stalking no contact order and violation of an order of protection. *See* 720 ILCS 5/12-3.4

As for the particularity requirement, a warrant "must describe the objects of the search with reasonable specificity but need not be elaborately detailed." *United States v. Vitek Supply Corp.,* 144 F.3d 476, 481 (7th Cir. 1998) ("This requirement ... ensures that the scope of a search will be confined to evidence relating to a specific crime that is supported by probable cause."). Indeed, limiting the search "ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-

Page 11 of 16

ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987); *United States v. Jones,* 54 F.3d 1285, 1289-90 (7th Cir. 1995). Additionally, the executing officers should be able to identify the things to be seized with reasonable certainty. *Jones,* 54 F.3d at 1290 (citing *United States v. Brown,* 832 F.2d 991, 996 (7th Cir.1987)).

The key question at this stage is whether the information contained within the warrant application "allow[ed] for a reasonable inference that there [was] a fair probability that evidence [of the offense] w[ould] be found. *U.S. v. Miles,* 86 F.4th 734. "[N]either an absolute certainty nor even a preponderance of the evidence is necessary." *United States v. Aljabari,* 626 F.3d 940, 944 (7th Cir. 2010). In other words, warrants are constitutional when they are as specific as the officer's knowledge allows under the circumstances.

B. Discussion

It is undisputed that Rotman responded to a call at 11028 Stoltz Boulevard on August 16, 2019 and spoke with Forsythe and Cahoy, who complained that Steven recorded them on his cell phone and also videotaped them. While on scene, Rotman observed camera-like devices at plaintiffs' residence of 11072 Stoltz Road, one of which was pointed at the Forsythe/Cahoy home and one of which was pointed at Diane Brady's residence. Later, Rotman went to the courthouse and verified that the court documents in both the stalking/no contact order and the order of protection contained no videotape provisions prior to seeking a search warrant.

As set forth *infra,* probable cause requires a "fair probability" that contraband or evidence of a crime will be found, it does not require conclusive evidence that links a

particular item to a crime. *United States v. Anderson*, 450 F.3d 294, 303 (7th Cir. 2006) (citation omitted). In this case, the plain language of the warrant refers to "any other evidence of offenses related to VIOLATION OF AN ORDER OF PROTECTION AND VIOLATION OF A STALKING NO CONTACT ORDER." (Doc. 107-5).

In Illinois, the offense of violation of a stalking no contact order is codified at 720 ILCS 5/12-3.9 and states in pertinent part:

> "(a) A person commits a violation of a stalking no contact order if:
>   (1) he or she knowingly commits an act which was prohibited by a court or fails to commit an act which was ordered by a court in violation of:
>     (A) a remedy in a valid stalking no contact order of protection … or,
>     (B) a remedy, which is substantially similar ot the remedies authorized … and,
>   (2) the violation occurs after the offender has been served notice of the contents of the order …".

With respect to violation of order of protection,

> "A person is guilty of violating an order of protection if he or she commits an act which was prohibited by a court or fails to commit an act which was ordered by a court as a remedy in an order of protection, and such violation occurs after the offender has been served notice of the contents of the order or otherwise has acquired actual knowledge of the contents of the order." 720 ILCS 5/12-309.

In both cases, the orders clearly prohibited video recording when the [victims] were on their own property[4]. (Doc. 107-5). Based upon the totality of the circumstances, Rotman had probable cause that Steven violated the stalking/no contact order and the order of protection.

---

[4] In fact, on January 14, 2020, Steven pled guilty to the Class A misdemeanor offense of unlawful violation of order of protection.

Moving on to the particularity of the warrant, there are two dimensions that must be satisfied under the Fourth Amendment. *See Dalia v. United States,* 441 U.S. 238, 255 (1979). First, the warrant must particularly describe the place, person, or thing to be searched. *Dalia,* 441 U.S. at 255. Second, the warrant must particularly describe the evidence or items to be seized. *Id.*; *United States v. Grubbs*, 547 U.S. 90, 97 (2006) (stating that the Fourth Amendment "does not set forth some general 'particularity requirement.' It specifies only two matters that must be 'particularly describ[ed]' in the warrant: 'the place to be searched' and 'the persons or things to be seized'.").

In this case, the warrant was limited in both location and scope. Specifically, the search location was limited to: "the person of Steven P. Lockhart, …, the residence and property of 11072 Stoltz Boulevard, Lawrenceville, Lawrence County, Illinois, being a single story white conventional home style dwelling, and any vehicles, out buildings, sheds located on the property". Furthermore, the scope of the warrant authorized seizure of the following: "Any evidence of ownership and usage of the premises and/or the following items: security cameras, home monitoring systems, cellular telephones, any type of mobile or portable electronic device capable of video recording, lap top computers, desktop computers, or any type of electronic device capable of storing recorded videos, or other materials constituting evidence of the criminal offense(s) noted herein; or any other evidence of offenses relation to VIOLATION OF AN ORDER OF PROTECTION AND VIOLATION OF A STALKING/NO CONTACT ORDER.

The supporting affidavit that was prepared by Rotman and accompanied the search warrant identified the dates when the videotaping was unauthorized. See *United*

*States v. Nafzger*, 965 F.2d 213, 215 (7th Cir.1992) (per curiam) (commenting that a showing of particularity may be made by the warrant, the supporting affidavit, or, by the executing officer's knowledge that there was a particular place to be searched); *United States v. Brown*, 832 F.2d 991, 996 (7th Cir.1987) (If a search warrant was deemed to lack sufficient particularity, it could be cured by the accompanying supporting affidavit, a practice we have previously deemed proper); *United States v. Freeman*, 532 F.2d 1098, 1100 (per curiam) (The warrant's general description of objects of the search, "when narrowed by the references in the affidavit incorporated into the warrant, adequately identified the items to be seized and limited the scope of the warrant").

Plaintiff's reliance on Judge Rosenstengel's analysis in *U.S. v. Winn,* 79 F.Supp.3d 904 (S.D. Ill. 2015), is akin to comparing apples and oranges. In *Winn,* defendant challenged the issuance of a search warrant via a motion to suppress in a criminal case regarding photos purportedly taken of underage girls at a public pool. See *U.S. v. Winn*, 14-cr-30169-NJR. In *Winn*, the warrant authorized the seizure of "any or all files" contained on the cell phone and its memory card that "constitute[d] evidence of the offense of [Public Indecency 720 ILCS 5/11-30]," including, but not limited to, the calendar, phonebook, contacts, SMS messages, MMS messages, emails, pictures, videos, images, ringtones, audio files, all call logs, installed application data, GPS information, WIFI information, internet history and usage, any system files, and any delated data. The Court focused on the language "any or all files" and granted the motion, finding that, although there was probable cause to search for photos and videos, the warrant request was overbroad in that it sought every type of data conceivable. The *Winn* Court

was also concerned that the accompanying complaint referenced a different offense, disorderly conduct, which consisted of different elements and which relied upon different evidence.

In this case, plaintiffs oft-emphasized that Steven did not reside at the Stoltz Boulevard address; however, there was no evidence to support this contention. A statement made by Cahoy that Lockhart had gone to his camper along the Embarras River by Dodge City was insufficient, and it even contradicted the facts. Indeed, Forsythe and Cahoy also told Rotman that Steven had recorded them that morning [August 16, 2019] before he was seen heading toward Dodge City, and Rotman heard that evening that Steven had returned to the Stoltz Boulevard residence. Steven was also present at the residence when the warrant was executed on August 20, 2019. Finally, this Court is also constrained to note that Steven did not challenge the issuance of the warrant in the underlying criminal matter. Instead, on January 14, 2020, he pled guilty to the offense of Unlawful Violation of Stalking No Contact Order, Lawrence County case 19CM115. (Doc. 107-7).

## CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiffs' motion for partial summary judgment. (Doc. 112).

**IT IS SO ORDERED.**

**DATED: March 7, 2024**

/s/ Stephen P. McGlynn
**STEPHEN P. McGLYNN**
**U.S. District Judge**