IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVEN P. LOCKHART, ALICIA LOCKHART, AND DONNA LOCKHART, | |
| **Plaintiffs,** | |
| V. | **Case No. 21-cv-1033-SPM** |
| RUSSELL ADAMS, ANDREW ROTMAN, TRENTON MASTERSON, JAMES WHITE, DIANE BRADY, KAREN KENSLER, BILLIE FORSYTHE, BRENDA BUCHANAN, CITY OF LAWRENCEVILLE, ILLINOIS, a municipal corporation, and LAWRENCE COUNTY, ILLINOIS | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court is a Motion for Summary Judgment filed by the Lawrence County defendants, Russell Adams ("Adams"), Andrew Rotman ("Rotman"), and Trenton Masterson ("Masterson"), collectively referred to as "LC defendants"[1]. (Doc. 106). For the reasons set forth below, the Court GRANTS in part and DENIES in part this motion.

### RELEVANT PROCEDURAL HISTORY

This Court has recently addressed motions for summary judgment from other parties where a detailed procedural history was set forth. At this time, the Court is

---

[1] At the time of the incidents alleged within the amended complaint, Russell Adams was the Sheriff of Lawrence County, and Andrew Rotman and Trenton Masterson were deputies with the Lawrence County Sheriff's Department.

only detailing the filings surrounding the instant motion. For a more extensive description of the procedural background of this case, see Docs. 149, 151, and 183.

On August 1, 2023, the LC defendants filed their motion for summary judgment, along with numerous exhibits and a supporting memorandum of law (Docs. 106 – 108). The motion challenges counts I, II, and III, which are brought against Rotman, Masterson, and Adams, respectively, along with each and every allegation contained therein (*Id.*). While some allegations are only brought against one defendant, others are brought against two, or even all three.

The allegations against Rotman in Count I are brought in paragraph 66 of the amended complaint, but also contain sub-paragraphs a-f as follows:

> "66.   As a result of his unlawful, malicious, unreasonable, reckless and/or indifferent conduct, Defendant Andrew Rotman acted under color of law but contrary to law, and did deprive Plaintiffs of their rights, privileges or immunities secured under the constitution and laws of the United States and 42 U.S.C. §1983, including:
>
>> a.   Their rights to a particularized warrant, which is required to protect persons against the wide-ranging exploratory searches the Framers intended to prohibit and the government's indiscriminate rummaging through their property, their cell phones and other electronic devices and to prevent the searching for and seizure of items that there is no probable cause to believe are either contraband or evidence of a crime, in violation of Amendment IV;
>>
>> b.   Their right to be free from unreasonable entries of their domicile, by a failure to knock and announce police presence and unnecessarily bashing in a door, causing damage to property, in violation of Amendment IV;
>>
>> c.   Their right to be free from unreasonable and excessive force, by pointing a Taser at the heads of non-resisting persons, where no use of force was necessary, in violation of Amendment IV;

    d. Steven's right to freedom of speech, by retaliating against Steven Lockhart by pointing a Taser at Steven's head and threatening "I will tase you", in retaliation for steven's prior refusal to talk with Rotman and ordering Rotman off his property, in violation of Amendment I;

    e. Unlawful seizure of property belonging to Donna Lockhart, which was outside the command of the search warrant, in violation of Amendment IV; and

    f. Failure to return seized property within a reasonable time, in violation of Amendment IV." (Doc. 61, pp. 11-12).

The allegations against Masterson in Count II are brought in paragraph 68, but also contain sub-paragraphs a. – e. as follows:

"68.   As a result of his unlawful, malicious, unreasonable, reckless and/or indifferent conduct, Defendant Trent Masterson acted under color of law but contrary to law, and did deprive Plaintiffs of their rights, privileges or immunities secured under the constitution and laws of the United States and 42 U.S.C. §1983, including:

    a. Their right to be free from unreasonable entries of their domicile, by a failure to knock and announce police presence and unnecessarily bashing in a door, causing damage to property, in violation of Amendment IV;

    b. Their right to be free from unreasonable and excessive force, by pointing a deadly weapon (firearm) at the heads of non-resisting persons, where no use of force was necessary, in violation of Amendment IV;

    c. Steven's right to be free from unreasonable force, by pushing and hitting a non-resisting disabled person, where no use of force was necessary, in violation of Amendment IV;

    d. Unlawful seizure of property belonging to Donna Lockhart, which was outside the command of the search warrant, in violation of Amendment IV; and

    e. Failure to return seized property within a reasonable time, in violation of Amendment IV." (Doc. 61, p. 13).

The allegations against Adams in Count III are brought in paragraph 70, but also contain sub-paragraphs a. – d. as follows:

> "70.   As a result of his unlawful, malicious, unreasonable, reckless and/or indifferent conduct, Defendant Russell Adams acted under color of law but contrary to law, and did deprive Plaintiffs of their rights, privileges or immunities secured under the constitution and laws of the United States and 42 U.S.C. §1983, including:
>
> > a.   Their right to be free from unreasonable entries of their home, by a failure to supervise his deputies, Rotman and Masterson, in violation of Amendment IV;
> >
> > b.   Their right to be free from unreasonable and excessive force, by failure to intervene in Rotman's and Masterson's pointing of weapons at the heads of non-resisting persons, where force was unnecessary, in violation of Amendment IV;
> >
> > c.   Their right to be free from unreasonable warrantless searches when Defendant Adams entered their domicile purportedly to search for medications, which was not authorized by the search warrant, in violation of Amendment IV;
> >
> > d.   Failure to return seized property within a reasonable time, in violation of Amendment IV." (Doc. 61, p. 14).

The LC defendants addressed the various claims alleged by plaintiffs with five main arguments, and also raised the defense of qualified immunity. (Doc. 107). Additionally, the LC defendants asserted that LC was only named in the amended complaint for indemnification purposes as no cause of action has been asserted against the county; as such, LC seeks summary judgment in its favor IF summary judgment is granted in favor of the individual defendants, i.e., Adams, Rotman, and Masterson. (*Id.*).

On October 16, 2023, plaintiffs filed their response to the Lawrence County defendants' motion for summary judgment. (Doc. 133). Within the response, plaintiffs

addressed each and every argument made by the LC defendants and contended that material facts in dispute precluded summary judgment on all claims. (*Id.*).

On October 30, 2023, the LC defendants filed their reply claiming that exceptional circumstances warranted a reply. (Doc. 148). Specifically the LC defendants argued there was a discrepancy in the law surrounding Fourth Amendment standards in excessive force claim. (*Id.*).

## STATEMENT OF FACTS[2]

Steven previously owned and lived at a home located at 11072 Stoltz Boulevard, Lawrenceville, IL. Alicia, Steven's daughter, lived at the Stoltz Boulevard residence, at times with Steven and at times with her boyfriend. Donna, Steven's ex-wife and Alicia's mother, worked as a travelling nurse and resided in Robinson, Illinois, but sometimes slept at the Stoltz Boulevard residence.

On November 5, 2018, former defendant Forsythe obtained a plenary stalking/no contact order against Steven in Lawrence County, Illinois cause number 18-OP-153, which was valid until November 5, 2019. The order included a provision that Steven "not video record either Petitioner [or] Dennis Cahoy when they are on their own property".

On May 6, 2019, former defendant Brady filed an emergency order of protection against her brother Steven in Lawrence County, Illinois cause number 19-OP-70. On June 6, 2019, the court entered an interim order of protection to be in place for 90

---

[2] In an effort to exclude immaterial and irrelevant facts, this Court has prepared its own Statement of Facts based upon the briefs provided by the parties herein including any attached exhibits and/or depositions. Additionally, this Court has previously entered Orders on other motions that included factual statements. (See Docs. 149, 151, and 183).

days, or until October 17, 2019. This order also included a provision wherein Steven could not record Brady while she was on her property.

On August 16, 2019, Rotman, a deputy with the Lawrence County Sheriff's office, was dispatched to 11028 Stoltz Road in Lawrenceville. During the law enforcement service call, Rotman spoke with Forsythe and Dennis Cahoy, who complained that Steven was using his cell phone to video-record them in violation of the stalking/no contact order. While on scene, Rotman observed two cameras mounted outside the Lockhart residence, one that was facing the Cahoy/Forsythe residence and one facing Diane Brady's residence. In support of his investigation, Rotman obtained court documents in 18-OP-153 and 19-OP-70 and verified that both were in effect and both prohibited Steven from video recording Forsythe, Cahoy, and Brady while they are on their own property.

On August 19, 2019, Rotman prepared a search warrant requesting the seizure of home monitoring systems. The State's Attorney of Lawrence County reviewed the warrant before it was issued by an Illinois state court judge.

On August 20, 2019, Rotman and Masterson executed the search warrant at the 11072 Stoltz Boulevard residence while Adams and White[3] provided additional security outside the home. During the search, officers located and seized a Master Mag 12 gauge Model: CC660, serial no. H702335, a Mossberg model 9200 shotgun barrel, a cell phone, and various cameras.

---

[3] Defendant James White was the Chief of Police of the City of Lawrenceville, which is located within Lawrence County, Illinois. The only involvement White had with plaintiffs was accompanying Adams, Rotman, and Masterson to the Stoltz Road property, which was not located within city limits, for execution of the warrant.

During execution of the warrant, Rotman observed photographs of Forsythe on Steven's phone that were purportedly taken on August 16, 2019, which was in violation of the Illinois state case, so Steven was taken into custody. Steven was transported to the County Jail for booking and was released approximately one hour later when Alicia posted his bond.

Following execution of the warrant, Rotman prepared the Return of Search Warrant, which contained errors regarding the officer involved and the date issued. On August 21, 2019, Rotman presented the Return of Search Warrant to the issuing Illinois state court judge

Steven did not recall pleading guilty to violating an order of protection - a criminal charge that arose from the search warrant, but court records show that he did.

The seized items were subsequently returned on May 3, 2023.

## LEGAL STANDARD

### I. Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055 (7th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); s*ee Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Stated another way, the nonmoving party must offer more than "[c]onclusory

allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003) *(*citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990)).

In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.,* 275 F.3d 654 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). However, no issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party". *See Faas v. Sears, Roebuck & Co.*, 532 F.3d 633 (7th Cir. 2008). The nonmovant cannot simply rely on its pleadings; the nonmovant must present admissible evidence that sufficiently shows the existence of each element of its case on which it will bear the burden of proof at trial. *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311 (7th Cir. 1995) (*citing Serfecz v. Jewel Food Stores*, 67 F.3d 591 (7th Cir. 1995); *Greater Rockford Energy and Technology Corp. v. Shell Oil Co.,* 998 F.2d 391 (7th Cir. 1993)).

## II.    42 U.S.C. § 1983

Section 1983 creates a species of tort liability for "the deprivation of any rights, privileges, or immunities secured by the United States Constitution. *Imbler v. Pachtman,* 424 U.S. 409, 417 (1976). Section 1983 is not itself a font for substantive rights; instead, it acts as "an instrument for vindicating federal rights conferred elsewhere." *Spiegel v. Rabinovitz,* 121 F.3d 251, 254 (7th Cir.1997). It allows citizens whose constitutional rights have been violated by public officials to sue in their individual capacity. *Fleming v. Livingston County, Ill,* 674 F.3d 874, 878 (7th Cir.

2012).

Generally, liability under § 1983 requires proof of two essential elements: that the conduct complained of (1) "was committed by a person acting under color of state law" and (2) "deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor,* 451 U.S. 527, 535 (1981), *overruled in part on other grounds by Daniels v. Williams,* 474 U.S. 327, 331–32 (1986). A supervisor is liable for a subordinate's misconduct resulting in constitutional violation only if the supervisor was personally involved. *Id.* "Personal involvement in a subordinate's constitutional violation requires supervisors to know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Id.* at 494.

### III.   Qualified Immunity

Officers are also afforded the extra layer of protection of qualified immunity. *Thayer v. Chiczerski,* 705 F.3d 237, 247 (7th Cir. 2012). The doctrine of qualified immunity shields officers from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity balances two important interests, the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officers from harassment, distraction, and liability when they perform their duties reasonably. *Pearson,* 555 U.S. at 231.

Whether a reasonable officer could have believed his or her conduct was proper is a question of law for the court to determine. *Hunter v. Bryant,* 502 U.S. 224, 228

(1991). In analyzing a qualified immunity defense, the Court must determine: (1) whether a constitutional right would have been violated on the facts alleged, taken in the light most favorable to the party asserting the injury; and (2) whether that right was clearly established when viewed in the specific context of the case. *Saucier v. Katz,* 553 U.S. 194, 200-201 (2001). To overcome qualified immunity, a plaintiff "must show both (1) that the facts make out a constitutional violation, and (2) that the constitutional right was 'clearly established' at the time of the official's alleged misconduct." *Saucier,* 553 U.S. at 200-201; *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 713 (7th Cir. 2013). A clearly established right is one that is sufficiently clear that every reasonable official would have understood what he is doing violates that right. *Reichle v. Howards,* 566 U.S. 658, 659 (2012).

## ANALYSIS

### Lawrence County Defendants' Motion for Summary Judgment

Defendants break their motion into the following six main arguments that address the various allegations against Rotman, Masterson, and Adams: (1) Rotman obtained a valid search warrant; (2) Rotman and Masterson knocked and announced that they were law enforcement officers executing a search warrant; (3) No excessive force occurred; (4) Rotman did not retaliate against Steven; (5) The property was lawfully seized; and, (6) Lawrence County is only named for indemnification purposes. (Doc. 107). In the alternative, they contend that they are entitled to qualified immunity on the claims asserted (*Id.*).

This Court will address the LC defendants' arguments as presented.

### I.   Warrant

Defendants first contend that summary judgment is appropriate as to Count I, subparagraph 66a, because Rotman obtained a valid search warrant. This Court previously addressed the warrant issue in plaintiffs' partial motion for summary judgment. (Doc. 183).

### A.  Law and Analysis

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated" except, "upon probable cause." U.S. Const. Amend. IV; *Missouri v. McNeely,* 569 U.S. 141, 148 (2013). Furthermore, once probable cause, supported by "Oath or affirmation," is established, the Fourth Amendment requires the resulting warrant to "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

The probable cause requirement under the Fourth Amendment requires "a fair probability that contraband or evidence of a crime will be found in a particular place, based on the totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). In turn, "[t]he particularity requirement 'ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).

It is uncontroverted that Rotman responded to a call at the residence of Forsythe and Cahoy on August 16, 2019. While on scene, Forsythe and Cahoy complained to Rotman that Steven had recorded them on two separate occasions

which they claimed was in violation of a no stalking/no contact order. While on scene, Rotman also observed cameras at the Lockhart residence on Stoltz Road, one of which appeared to be pointing in the direction of the Forsyth/Cahoy home.

In response to what Rotman was told and to what he observed, Rotman then verified that the order in cause 18-OP-153, which listed Forsythe and Cahoy as protected parties, restricted Steven from video recording either Forsythe or Cahoy when they were on their own property. Based upon the totality of these factors, Rotman had probable cause to believe that Steven had violated the order and that a search of Steven and/or the Stoltz Road residence would uncover evidence of this offense.

As for the particularity requirement, there are two elements at issue. *See Dalia v. United States,* 441 U.S. 238, 255 (1979). First, the warrant must particularly describe the place, person, or thing to be searched. *Dalia,* 441 U.S. at 255. Second, the warrant must particularly describe the evidence or items to be seized. *Id.*; *United States v. Grubbs*, 547 U.S. 90, 97 (2006) (stating that the Fourth Amendment "does not set forth some general 'particularity requirement.').

In this case, the warrant was limited by the person to Steven, to the place as the residence and property of 11072 Stoltz Boulevard, Lawrenceville, Lawrence County, Illinois, and to the thing as a single-story white conventional home dwelling, and any vehicles, out buildings/sheds located on the property. (Doc. 107-5). The warrant also identified the evidence to be searched and the items to be seized as:

> "Any evidence of ownership and usage of the premises and/or the following items: security cameras, home monitoring systems, cellular telephones, any type of mobile or portable electronic device capable of

video recording, lap top computers, desktop computers, or any type of electronic device capable of storing recorded videos, or other materials constituting evidence of the criminal offense(s) noted herein; or any other evidence of offenses relation to VIOLATION OF AN ORDER OF PROTECTION AND VIOLATION OF A STALKING/NO CONTACT ORDER."

In accordance with the foregoing, as well as the analysis set forth in plaintiffs' partial motion for summary judgment on the issue of the warrant (Doc. 183), the Court finds no genuine issue of material fact that Rotman had probable cause that Steven had violated the terms of the order of protection and the no stalking/no contact order and that the warrant was sufficient particularized. Accordingly, the Court GRANTS defendants' motion for summary judgment on this issue.

## B. Qualified Immunity

Assuming arguendo that the search warrant was issued in violation of the Fourth Amendment, Rotman is entitled to qualified immunity. Indeed, he obtained a search warrant, which was reviewed by the prosecutor prior to a second review and issuance by a neutral judge.

The Supreme Court has emphasized that the threshold for overcoming qualified immunity is particularly high in cases in which a search warrant was issued by a judicial commissioner who has *not* been shown to have been biased, because "an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012). Moreover, "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively

reasonable manner," so it would be "rare" to overcome qualified immunity in such circumstances. *Id.* at 546, 556.

## II.    Knock and Announce

The second argument of the LC defendants' motion for summary judgment addresses the allegation set forth in Count I – paragraph 66b, Count II – paragraph 68a, and Count III – paragraph 70a. (Doc. 107). Within the amended complaint, plaintiffs alleged that Rotman and Masterson violated their right under the Fourth Amendment to be free from unreasonable entries of their domicile, by a failure to knock and announce police presence prior to unnecessarily bashing in a door, which caused damage to property. (Doc. 61). They further claim that Adams failed to supervise his deputies. (*Id.*)

### A. Law and Analysis

A search that is authorized by a valid warrant may still violate the Fourth Amendment if it is not executed in a reasonable manner. *Guzman v. City of Chi*, 565 F.3d 393, 397 (7th Cir. 2009) (citing *Maryland v. Garrison*, 480 U.S. 79, 84 (1987)). The Fourth Amendment ordinarily requires officers to knock and announce their presence when executing a search warrant for a home, although there are exceptions to this general rule. *See Hudson v. Michigan*, 547 U.S. 586, 589 (2006). Indeed, the Supreme Court has determined that the reasonableness of a search of a dwelling depends *in part* on whether law enforcement officers announced their presence and authority prior to entering. 514 U.S. 927, 931 (1995) (*emphasis added*). Moreover, this requirement has been codified,

> "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant." 18 U.S.C. §3109.

Rotman and Masterson testified that they knocked and announced their presence prior to entering the residence at 11072 Stoltz Boulevard. (Doc. 107-3, Rotman Dep. pp. 125-129; Doc. 107-1, Masterson Dep. pp. 52-53). Adams also testified that Rotman and Masterson knocked and announced their presence prior to entering the home. (Doc. 103-5, Adams Dep. pp. 31-32). However, no one else can corroborate this testimony. Chief White testified that the deputies had already entered the home when he arrived. (Doc. 103-4, White Dep. p. 34:15-16). Steven testified that he "was outside and heard a bang" (Doc. 104-1, Steven Lockhart Dep., p. 77:7), while Alicia testified that she "heard a loud noise" … "a loud bang" (Doc. 104-2, Alicia Lockhart Dep., p.26:6, 12).

Granting plaintiffs the benefit of all reasonable factual inferences, the Court concludes that the testimony of Steven and Alicia is sufficient to create a genuine factual dispute as to whether Rotman and Masterson knocked and announced their presence. A reasonable jury could conclude that the loud "bang" both Steven and Alicia heard was the knocking and announcement or that Steven and Alicia were too far from the door to hear the knocking and announcement. But a jury could also believe that the reason Steven and Alicia did not hear the officers was because the officers did not knock or announce their presence and/or that the noise was the officers breaching the door. As such, summary judgment is denied on this issue as to defendants Rotman and Masterson.

With respect to Adams, plaintiffs contend that he failed to supervise Rotman and Masterson. This allegations is vague and does not specifically reference the "knock and announce" requirement. Nevertheless, because Adams was present with Rotman and Masterson and contends they complied with the "knock and announce" requirement, summary judgment is denied as there is a question as fact..

## B. Qualified Immunity

As for qualified immunity, the Fourth Amendment requires law enforcement to knock and announce their presence before *any* entry of a home (subject to certain exceptions), whether or not the entry is authorized by a valid warrant. *See United States v. Banks*, 540 U.S. 31, 36 (2003). As set forth *infra,* plaintiffs have shown a genuine factual dispute as to whether Rotman and Masterson failed to knock and announce before entering the residence. Given that there can be no dispute that the right to have officers knock and announce their presence before forcing entry to execute a search warrant was clearly established prior to August 2019, *see, e.g.*, *Banks*, 540 U.S. at 36, this factual dispute precludes summary judgment on qualified immunity grounds. If the jury finds that the LC defendants knocked and announced their presence, then qualified immunity would apply.

## III.    Excessive Force

The LC defendants next challenge plaintiffs' claims that Rotman and Masterson used excessive force, and that Adams failed to intervene in Rotman's and Masterson's pointing of weapons. (Doc. 61, ¶66c, ¶68b). The LC defendants claimed their conduct was "objectively reasonable" (Doc. 107) while the plaintiffs argue that it was unreasonable. (Doc. 133). Plaintiffs also contended that LC defendants' conduct

constituted a seizure under the Fourth Amendment; however, there was no allegation in the complaint regarding unlawful seizure. (*Id.*). Nevertheless, the Court still addressed this issue.

### A. Law and Analysis

This situation arose during the execution of a search warrant, which creates a unique set of circumstances; therefore, the Court will focus its research and analysis on similarly situated cases. Alicia claimed that Masterson pointed a firearm at her, albeit briefly. Steven claimed that Rotman pointed a taser at him and threatened to shoot him and that Masterson pointed a gun at both Alicia and him. Steven also claimed that Masterson shoved him on the shoulder and shoved him in his lower back when he was exiting the home. However, Steven also conceded that he was noncompliant in that he originally refused to leave the home and that Masterson only briefly pointed a weapon at Alicia when she turned the hallway corner unannounced and surprised him. Notwithstanding the denials by Masterson and Rotman[4], the Court must determine whether there is the need for a trial—in other words, whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[5] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).

---

[4] Rotman repeatedly testified that he did not recall using his taser, but he did testify that Steven and Alicia were ordered out of the house for "officer safety", to verify there was "no one else inside the residence", and because "it's easier to keep them contained outside and present someone from attempting to grab a weapon that we're not aware of." (Doc. 107-3, Rotman Dep., pp. 143:8, 143:17-17, and 145:17-19).

[5] The mere existence that there is a factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. The requirement is that there be no genuine issue of material fact. *Anderson,* 477 U.S. at 248.

In executing a search warrant, officers may take reasonable action to secure the premises and to ensure their own safety and the efficacy of the search. *Muehler v. Mena,* 544 U.S. 93, 98-100 (2005). The test of reasonableness under the Fourth Amendment is an objective one, where the officer's subjective good or bad intentions do not enter into the analysis. *Graham v. Connor,* 490 U.S. 386, 397 (1989). Instead, we consider factors such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 395. We also consider whether the citizen was under arrest or suspected of committing a crime, was armed, or was interfering or attempting to interfere with the officer's execution of his or her duties. *See McDonald v. Haskins*, 966 F.2d 292, 292–93 (7th Cir.1992). In the end, the excessive force inquiry "looks to whether the force used to seize the suspect was excessive in relation to the danger he posed—to the community or to the arresting officers—if left unattended." *Id.* at 294 (citing *Wilkins v. May,* 872 F.2d 190, 193 (7th Cir.1989)).

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. To state a claim for an unreasonable seizure, a plaintiff must allege that: (1) the officers seized the plaintiff; and (2) the seizure was "unreasonable." *See Carlson v. Bukovic*, 621 F.3d 610, 618 (7th Cir. 2010). A person who is not free to leave his home while officers are conducting a search is "seized" for Fourth Amendment purposes. *Michigan v. Summers*, 452 U.S. 692, 696 (1981). An official seizure is ordinarily unreasonable unless it is supported by probable cause, even where no formal arrest is made. *See id.*; *Dunaway v. New York,* 442 U.S. 200,

212–13 (1979). However, "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Summers,* 452 U.S. at 705; *see also U.S. v. Pace*, 898 F.2d 1218, 1239 (7th Cir.1990). This is because there is a substantial law enforcement interest in preventing the flight of a suspect in the event that incriminating evidence is found, in protecting the safety of the officers, and in the orderly completion of the search which is facilitated by the presence of the suspects. *Summers*, 452 U.S. at 703. Furthermore, "the detention represents only an incremental intrusion on personal liberty when the search of a home has been authorized by a valid warrant." *Id.*

The analysis does not change merely because Alicia was not the target of the warrant, as any person present during the search may be detained for its duration. *See United States v. Jennings*, 544 F.3d 815, 818 (7th Cir. 2008). There is no question that Steven and Alicia were seized; however, that is not an issue because the seizures were not unreasonable and any resulting detention was not prolonged unnecessarily.[6] There is also no question as to whether unreasonable and excessive force resulted from the pointing of a firearm at Alicia. Indeed, when asked about a firearm being pointed at her, Alicia estimated it was only a couple a seconds, and said, "It was almost like I kind of somewhat startled him when I came around the corner." (Doc. 104-2, p. 29:14-16). She then went to the front porch of the house where she made small talk with [Chief] White. She was neither handcuffed nor restrained

---

[6] Any duration was caused by Steven's failure to comply with instructions to exit the home.

in any manner. As such, summary judgment is appropriate as to any alleged claims of unreasonable and excessive force to Alicia.

In this case, the warrant identified the misdemeanor offenses of violation of an order of protection and violation of a stalking no contact order. Rotman and Masterson were not certain what, or who, they would encounter when they entered the home. As set forth *infra,* Alicia even mentioned that she "startled" the officer and that a weapon was only pointed at her for seconds. It is clearly reasonable to allow officers to assess a situation before letting their guard down. *Archer v. Chisholm,* 870 F.3d 603, 619 (7th Cir. 2017) (Police officers did not use excessive force in executing a search warrant by bringing a battering ram and entering the home with guns drawn, where the battering ram was not used and officers quickly holstered their weapons.).

As to Steven, the analysis is different, but the result is the same. The officers had probable cause to execute the search warrant and probable cause to search Steven, and Steven conceded that he did not immediately comply with their directives. It was a tense environment, but once the officers had control of the situation, all weapons were withdrawn. As such, summary judgment as to the pointing of a taser and/or firearm at Steven and Alicia, allegations 66c and 68b, respectively, are granted as no reasonable jury could find, given the circumstances, that either Rotman's or Masterson's conduct was objectively unreasonable or an excessive use of force. On this same notion, summary judgment is appropriate as to Adams' alleged failure to intervene. Summary judgment is also proper as to Adams under the *Byrd* standard: "[a]n officer who is present and fails to intervene to prevent

other law enforcement officers from infringing upon the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, **or** (3) that any constitutional violation has been committed by a law enforcement official; **and** the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (emphasis added). In sum, an officer must know that a citizen's rights are being infringed, and he must have a "realistic opportunity" to intervene.

However, summary judgment is denied as to allegation 68c regarding touching of Steven by Masterson, as there remains a question of fact as to what happened and a reasonable jury could conclude that Masterson used excessive and unreasonable force in "shoving" Steven out of the home versus the assistance alleged by Masterson.

### B. Qualified Immunity

Whether a government official is entitled to qualified immunity is a legal question for resolution by the court, not a jury. *Hunter v. Bryant,* 502 U.S. 224, 228 (1991); *Jones v. City of Chicago,* 856 F.2d 985, 994 (7th Cir.1988). Qualified immunity claims are determined by reference to a two-part inquiry, i.e. (1) whether facts alleged or shown by plaintiff make out violation of constitutional right, and (2) if so, whether that right was clearly established at time of defendant's alleged misconduct. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). Although *Saucier* indicated that the two questions must be answered in that order, the Supreme Court later determined that the sequence was not mandatory and that courts could exercise their discretion in

deciding which of the two prongs of the qualified immunity analysis should be address first. *Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

In this case, it is irrelevant what sequence the questions are answered as the answer does not change the summary judgment decision. Neither Steven nor Alicia have made out a violation of a constitutional right in the alleged pointing of weapons during the execution of a valid search warrant, while officers were surprised and were attempting to gain compliance of those within the home.

The Court notes that Steven testified that the look on Masterson's face was "God awful"[7] and that he had prior contact with Rotman[8], but an officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional. See *Scott v. United States, supra,* 436 U.S. 128, 138 (1978). Apprehension that the police *might* do something falls short of a showing that they actually did use objectively abusive tactics. *Archer,* 870 F.3d at 619. As such, qualified immunity is also warranted as to the allegations contained in 66c and 68b, but not as to 68c, unless a jury determines that the alleged "shoving" was not unreasonable force. If a jury finds there was no constitutional violation, then qualified immunity applies.

---

[7] Doc. 104-1, Dep. Lockhart, Steven, p. 79:3-4.

[8] Doc. 104-1, Dep. Lockhart, Steven, p. 91: 13-19.

## IV.   Retaliation

The LC defendants next challenge the contention that Rotman retaliated against Steven for his prior refusal to talk with him and ordering him off of his property as alleged in paragraph 66d of the amended complaint. (Doc. 106).

### A. Law and Analysis

As a general matter, "the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Hartman v. Moore,* 547 U.S. 250, 256 (2006). In order to prevail on his First Amendment retaliation claim, Steven must show: (1) he engaged in a protected First Amendment activity; (2) he "suffered a deprivation that would likely deter First Amendment in the future"; and (3) causation—specifically, "the First Amendment activity was 'at least a motivating factor' in Rotman's decision to take the retaliatory action." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)).

This Court concedes that Steven engaged in protected activities – he does not have to speak with the police and he can ask them to leave his property.[9]  He can also call the police to report the conduct of another. As for Steps 2 and 3, Steven contends he suffered a deprivation when Rotman threatened to tase him while executing the search warrant and he also claims his prior refusals to talk with Rotman motivated the alleged threats to tase him. (Doc. 133).

---

[9] At the time Steven acted, the police had neither a search warrant nor an arrest warrant.

At this phase, the Court assumes Steven has set forth a prima facie case and must determine, taking all facts and reasonable inferences in Steven's favor, whether there is a dispute that Rotman would have made the alleged threats despite any animus toward Steven's protected First Amendment activity. *Thayer v. Chiczewski,* 705 F.3d 237, 252 (7th Cir. 2012). Once a defendant produces evidence that the same decision would have been made in the absence of the protected speech, the burden shifts back to the plaintiff to demonstrate that the proffered reason was pretextual and that the real reason was retaliatory animus. *See Zellner v. Herrick,* 639 F.3d 371, 379 (7th Cir.2011).

"At the summary judgment stage, this means a plaintiff must produce evidence upon which a rational finder of fact could infer that the defendant's proffered reason is a lie." *Id.; see also Massey v. Johnson,* 457 F.3d 711, 720 (7th Cir.2006) (summary judgment appropriate where court can say without reservation that a reasonable finder of fact would be compelled to credit the defendant's non-retaliatory explanation). In other words, if retaliation is not the but-for cause for the threats, "the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind." *Hartman,* 547 U.S. at 260.

Steven did not comply with Rotman's and Masterson's directives to exit the home. Although Steven was not actively resisting, his refusals to leave were prolonging the situation, escalating a tense situation, and raising concerns of officer safety. While Rotman denies threatening to tase Steven, no reasonably jury can infer

that any such threats were the result of Steven's conduct from several months prior to this incident.

Indeed, an official's "action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway". *Hartman,* 547 U.S. at 260. Both Rotman and Masterson were adamant that Steven needed to exit the property. Therefore, because Steven has produced no evidence, direct or circumstantial, that Rotman would not have taken the same action absent the retaliatory motive, Rotman is entitled to summary judgment on the First Amendment retaliation claim set forth in paragraph 66d of the amended complaint.

## V. Seizure

The LC defendants next contend that all property was properly seized in accordance with the lawful search warrant and argue that plaintiffs did not properly avail themselves of the post-deprivation remedies. (Doc. 107). Plaintiffs do not challenge the initial seizure set forth in paragraph 66e and 68d; as such, summary judgment is granted as to those claims, and those claims are dismissed. Instead, plaintiffs challenge that Steven and Donna were denied the return of their property for more than three years, as alleged in 66f and 68e of the amended complaint, from the February 18, 2020 date the property was released in the Lawrence County matter until May 3, 2023 when it was released to Steven and Donna by the Lawrence County Sheriff's Department. (Doc. 133, p. 20).

### A. Law and Analysis

Following the execution of the search warrant, Rotman placed the seized items in his personal evidence locker that only he could access, not the department vault.

Illinois law has provisions for how to handle seized property, either with or without a warrant. Section 108–11 provides:

> "The court before which the instruments, articles or things are returned shall enter an order providing for their custody pending further proceedings." 725 ILCS 5/108-11.

Following Steven's plea of guilty to violation of a no contact no stalking order, on January 14, 2020, Judge Shaner issued an order indicating that the property could be returned after February 18, 2020. (Doc. 107-7).

Steven and Donna contend that they went to the police department and spoke with Masterson, who told them they could only get the property from Rotman, who was away on training. Steven and Donna contend they left messages for Rotman regarding their property, but he never returned their calls. Ultimately, Rotman was directed to transfer the items to the department vault so it could be accessed and returned, in his absence.

Although a court order was issued in the state case which plaintiffs contend Rotman and Masterson violated, they never sought to enforce the order in Lawrence County. Instead, that claim was included in this action, which was initiated more than eighteen months after the entry of the order. Notwithstanding the state court process, a reasonable fact finder could conclude that Rotman and/or failed to return the seized property within a reasonable time. As such summary judgment is denied as to these claims. Summary judgment is granted on this allegation as to Adams, as plaintiffs never spoke with Adams or reached out to Adams so he was not personally involved as required under §1983.

**B. Qualified Immunity**

This is not the end of the inquiry. Under the doctrine of qualified immunity, police officers are "shield[ed] from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638 (1987). Indeed, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law. *Allin v. City of Springfield*, 845 F.3d 858, 862 (7th Cir. 2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)).

There is a constitutional right at issue – the deprivation of property. However, Masterson did not act reasonably in denying to return property that he could not access, so he is entitled to qualified immunity. He could not convey what he did not have. This court is not so inclined to find qualified immunity as to Rotman.

**VI.   Lawrence County**

In their final argument, the LC defendants contend that they are solely named for purposes of indemnification. No causes of action were asserted against the county and plaintiffs did not address this argument; accordingly, summary judgment is granted in favor of the county to the extent it has been granted against the LC defendants.

**VII.   Medications**

Plaintiffs contend that Adams entered their domicile purportedly to search for medications. (Doc. 61, ¶70c). The motion for summary judgment is silent on this issue and this allegations is not contained with the LC defendants' "chart". Moreover,

medications were not mentioned in the search warrant. As such, plaintiffs may proceed on this claim.

## CONCLUSION

For the reasons set forth above, the Court GRANTS in part and DENIES in part the Motion for Summary Judgment as follows:

I.    With respect to Count I/Rotman - the Court GRANTS the motion as to Paragraphs 66a, 66c, 66d, and 66e of the amended complaint and dismisses said claims;

II.   With respect to Count II/Masterson, the Court GRANTS the motion as to Paragraphs 68b, 68d, and 68e of the amended complaint and dismisses said claims;

III.  With respect to Count III/Adams, the Court GRANTS the motion as to Paragraphs 70b, 70d of the amended complaint and dismisses said claims; and,

IV.   The Court DENIES the motion with respect to the remaining allegations against these defendants.

Accordingly, plaintiffs may proceed on the following claims:

1. Count I/Rotman – Paragraphs 66b and 66f;

2. Count II/Masterson – Paragraphs 68a and 68c; and,

3. Count III/Adams – Paragraphs 70a and 70c.

**IT IS SO ORDERED.**

**DATED:**   <u>**March 21, 2024**</u>

_/s/ Stephen P. McGlynn_
**STEPHEN P. McGLYNN**
**U.S. District Judge**