IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

STEVEN P. LOCKHART, ALICIA
LOCKHART, and DONNA
LOCKHART,

           Plaintiffs,

v.

RUSSELL ADAMS, ANDREW
ROTMAN, TRENTON MASTERSON,
JAMES WHITE, DIANE BRADY,
KAREN KENSLER, BILLIE
FORSYTHE, BRENDA BUCHANAN,
CITY OF LAWRENCEVILLE,
ILLINOIS, a municipal corporation,
and LAWRENCE COUNTY,
ILLINOIS

           Defendants.

Case no. 21-cv-1033-SPM

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court is a Motion for Sanctions and/or Disciplinary Referral (Doc. 176) filed by plaintiffs Steven P. Lockhart, Alicia Lockhart, and Donna Lockhart, against Attorney Joseph Bleyer ("Bleyer") who represented now-dismissed defendants Billie Forsythe and Brenda Buchanan. For the reason's set forth below, the Court **DENIES** the Motion for Sanctions.

This case involves a contentious relationship, involving several family members and neighbors, ultimately requiring police intervention. Three of the defendants are siblings of plaintiff Steven Lockhart, while a fourth is a former neighbor. A no contact order and plenary order of protection were issued against Steven for the benefit and

protection of Billie Forsythe and Diane Brady, respectively. Additional complaints resulted in the issuance and execution of a search warrant, which culminated in a criminal charge of Unlawful Violation of an Order of Protection to which Steven entered a guilty plea on January 14, 2020[1].

## RELEVANT PROCEDURAL BACKGROUND

On August 19, 2021, plaintiffs Steven Lockhart ("Steven"), Alicia Lockhart ("Alicia'), and Donna Lockhart ("Donna") Lockhart commenced this action via a 6 count Complaint filed by Attorney Jude Redwood. (Stricken Doc. 1). On September 23, 2021, Attorney Joseph Bleyer entered his appearance for defendant Brenda Buchanan, a sister of Steven Lockhart. (Doc. 11). On October 17, 2021, Attorney Bleyer entered his appearance for defendant Billie Forsythe, a neighbor of Steven Lockhart. (Doc. 22).

On August 1, 2023, Forsythe and Buchanan filed Motions for Summary Judgment (Docs. 109, 110). Said motions were amended and refiled on August 2, 2023 to reflect redactions within the various exhibits. (Docs. 119, 120). On October 16, 2023, plaintiffs filed their response in opposition. (Doc. 136). On November 2, 2023, the motions were granted and the counts against Forsythe and Buchanan were dismissed, thus terminating Attorney Bleyer's involvement in this matter. (Doc. 149).

On February 4, 2024, plaintiffs filed a Motion for Sanctions and/or Disciplinary Referral, along with supporting memorandum of law. (Docs. 176, 177). Within the filings, plaintiffs contend that Attorney Bleyer's conduct at the deposition of Steven Lockhart violated several Rules of Professional Conduct, *to wit:* RPC 1.3, RPC 4.4(a), and RPC 8.4(d). (*Id*). Specifically, plaintiffs contend that Attorney Bleyer made a sexist

---

[1] Cause number 19-CM-115, Lawrence County, Illinois.

and demeaning statement by asking Rev. Erik Redwood, Attorney Redwood's husband and paralegal, "Who wears the pants in your family?" Said statement was purportedly overheard by Attorney Redwood as well as plaintiffs. This motion asserts that the statement was so upsetting to Steven Lockhart that he was unable to concentrate during his deposition. (*Id.*). Plaintiffs further contend that "Attorney Bleyer engaged in misconduct during the deposition by interrupting other counsel's questioning, interrupting the witness' testimony, ridiculing the witness' religious beliefs, arguing/badgering the witness, repeatedly asking questions that had been answered, and making weird and inappropriate commentary during the deposition." (Doc. 176, ¶18).

On March 19, 2024, Attorney Bleyer filed his Response in Opposition to Motion for Sanctions and/or Disciplinary Referral. (Doc. 187). Within his response, Attorney Bleyer admitted to being admonished by Attorney Redwood during the deposition for speaking at the same time as the witness, but he adamantly denied making any sexist statements or mocking Steven's religion. (*Id.*). Instead, Attorney Bleyer claimed he was following the witness' lead and following up on unclear statements, while satisfying his obligation to his clients to cross examine Steven and questioning the bases of his claims. (*Id.*).

## LAW

Plaintiffs' motion was filed pursuant to Local Rule 83.2, which provides that the Court has "inherent power and responsibility to supervise the conduct of attorneys admitted to practice before it." (SDIL-LR 83.2). Additionally, this standard comports with that of the Seventh Circuit. *See Ramirez v. T & H Lemont, Inc.*, 845 F.3d 772, 776

(7th Cir. 2016) ("[A] court has the inherent authority to manage judicial proceedings and to regulate the conduct of those appearing before it, and pursuant to that authority may impose appropriate sanctions to penalize and discourage misconduct."); *See also Tucker v. Williams*, 682 F.3d 654, 661–62 (7th Cir. 2012) (holding that a court has the inherent power to impose sanctions where a "party has willfully abused the judicial process or otherwise conducted litigation in bad faith").

According to the Supreme Court, inherent powers must be exercised with restraint and discretion. *Chambers v. Nasco, Inc.*, 501 U.S. 32, 44, 27 (1991). Nevertheless, courts can use these inherent powers to sanction attorneys "for actions taken in bad faith, vexatiously, wantonly, or for oppressive reasons"; however, inherent authority sanctions must fit the misconduct and take account of context. *Johnson v. Cherry*, 422 F.3d 540, 548–49 (7th Cir. 2005) (quoting *Chambers*, 501 U.S. at 45–46). "Bad faith" has both an objective and a subjective meaning: "a lawyer engages in bad faith by acting recklessly or with indifference to the law, as well as by acting in the teeth of what he knows to be the law." *In Re TCI,* Ltd, 769 F.2d 441, 445 (7th Cir. 1985).

The Southern District of Illinois has adopted the Rules of Professional Conduct established by the Supreme Court of Illinois. SDIL-LR 83.2(a)(1). Attorney Redwood identified the following three rules, which she contended were violated by Attorney Bleyer:

1. **1.3. Diligence:** A lawyer shall act with reasonable diligence and promptness in representing a client.

2. **4.4(a) Respect for Rights of Third Persons:** In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of

    such a person.

   3. **8.4(d) Misconduct** → It is professional misconduct for a lawyer to:

    (d) engage in conduct that is prejudicial to the administration of justice.

## EVIDENTIARY HEARING

On April 23, 2024, an evidentiary hearing was held in response to plaintiffs' motion for sanctions. (Doc. 176). At the outset, the parties were advised that the undersigned had reviewed the applicable pleadings as well as the deposition transcript. The Court then heard testimony from five witnesses: Attorney Redwood, Reverend Erik Redwood, Steven Lockhart, Alicia (Lockhart) Wells, and Donna Lockhart. (Doc. 194).[2]

**Testimony of Attorney Jude Redwood**

Attorney Jude Redwood took the stand and testified in the narrative. Her client, Steven Redwood, was deposed on September 20, 2022 and September 21, 2022 at the Lawrence County Courthouse. She asserted that Attorney Bleyer, throughout the deposition, "blurted" things out, interrupted the witness several times, and tried to put words in his mouth, seemingly in an attempt to antagonize the witness. At one point, Attorney Redwood even confronted Attorney Bleyer on the record, and he apologized and said he would do better.

Attorney Redwood claims that Steven is a religious man and that Attorney Bleyer ridiculed his religion. Steven testified that his sisters were "possessed" with "demons or imps", and Attorney Bleyer seized the word, "possessed", repeatedly using it instead of letting Steven testify in his own words.

---

[2] In addition to personal recollection, this Court has reviewed the transcript from the evidentiary hearing in depth, utilizing both while preparing this Order.

When Attorney Bleyer concluded his examination, he said the phrase, "the skunk and the monkey"[3]. Although Attorney Redwood was not certain of the meaning at the time of the deposition because it was not a part of her "regular parlance nor that of anybody with whom she associates" she had previously heard the phrase. After the deposition, she looked the phrase up and confirmed that it was totally inappropriate and in violation of the Rules of Professional Conduct because it was a "dirty, nasty word that degrades women, a phrase that degrades women."

Lastly, Attorney Redwood recalled an incident that occurred during a break. Before returning from break, Attorney Redwood and Steven were talking and stopped outside the deposition room. They overheard Attorney Bleyer say, "Who wears the pants in your family?" Attorney Redwood recalled Attorney Bleyer asking her husband, Reverend Erik Redwood, the exact same question several years prior during a deposition break in another case, *i.e.*, *Capps v. Drake, et al,* No. 14-441-NJR-DGW (S.D. Ill., filed Apr. 15, 2014). Although Attorney Redwood thought the statement was stupid and ignorant, she let it go that time because she did not think she would ever see Attorney Bleyer again. However, this time, she decided she would not to let it go.

**Testimony of Erik S. Redwood**

Reverend Erik S. Redwood is married to Attorney Jude Redwood and is the paralegal for their law firm and also does investigations. In his capacity, he was required to assist at depositions, and he was at the deposition of Steven.

---

[3] Although the deposition transcript reflects that Attorney Bleyer stated "The monkey and the skunk" upon conclusion of his direct examination of Steven, during the evidentiary hearing, Attorney Redwood testified that Attorney Bleyer stated, "The skunk and the monkey."

Rev. Redwood recounted being in the boardroom on a break with Attorney Bleyer, who had a "weird, bizarre look on his face", when Attorney Bleyer asked him, in a "sarcastic, mocking, hateful tone", "[w]ho wears the pants in your family?" Rev. Redwood did not reply to Attorney Bleyer, but was shocked that a lawyer would do such a thing. Their clients were in the room and they appeared affected by the question, but "it's not my place" to do anything. He just "kept my mouth shut, sucked it up, and just felt what it was - misogynous hate, vulgar, ignoramus level, monstrosity of ignoramus level". Because Rev. Redwood tries "not to hate anybody," he said "a prayer to God almighty" that Attorney Bleyer would get enlightened and give up this evil".   Rev. Redwood also thought it was totally unprofessional and that Attorney Bleyer was in direct contempt of court because they were at a deposition.

Rev. Redwood was paying attention during Steven's deposition and felt that Attorney Bleyer had a challenging attitude that progressively got more intense. After Steven testified that his sisters were "possessed," Attorney Bleyer made it a running theme to use the word, "possessed." Attorney Bleyer mocked Steven, argued with him, and was insistent on controlling the conversation, all of which made Steven confused.

Rev. Redwood heard Attorney Bleyer say, "[T]he monkey and the skunk," which he knew meant "stinky pussy". Rev. Redwood then testified that statement brings him to tears because he was tired of seeing women insulted while trying to practice law. He recalled hearing former Illinois Supreme Court Chief Judge Rita Garman speaking at the Vermilion County Courthouse about her struggles to earn respect as a female attorney and compared it to what his wife, Jude Redwood, suffered through.

Rev. Redwood did not know what was in Attorney Bleyer's mind when he said "The monkey and the skunk" but he knows what it means. Rev. Redwood was certain that Attorney Bleyer was not referring to the little poem about the monkey and the skunk because he radiated "belligerence and hate." Attorney Bleyer used a vulgarity Prak

that was directed at the court because it was during a deposition and Rev. Redwood was upset about it.

When questioned about a prior case, *Redwood v. Dobson*[4], wherein Judge Easterbrook called him out for calling his prior attorney, who was African-American, a "shoe-shine boy", Rev. Redwood responded by attacking the integrity of Judge Easterbrook. In fact, Rev. Redwood did not deny calling his prior attorney a "shoe-shine boy," but instead testified that Judge Easterbrook misread the situation and acted upon it wrong, and further stated that there is a law journal article from the University of Chicago "characterizing Judge Easterbrook as having a habitual fault for doing that."

**Testimony of Steven Patrick Lockhart**

Plaintiff Steven Lockhart was deposed on September 20-21, 2022. He was questioned by Attorney Bracey on the first day, but Attorney Bleyer questioned him on September 21st. While being questioned on the 20th, Attorney Bleyer interrupted several times and flustered him. Steven has congestive heart failure and chronic pain, and stress made it worse. Attorney Bleyer was "mean" enough to "aggravate his medical conditions."

---

[4] *Redwood v. Dobson, et al.*, 476 F.3d 462 (7th Cir. 2007).

While on a break in the hallway on the 21st with Attorney Redwood, he overheard Attorney Bleyer ask, "[w]ho wears the pants in the family?" He recognized the voice as the same one that had mocked him and his religion. When they walked in the room, he saw Attorney Bleyer and Rev. Redwood, but none of the other attorneys.

Steven is a committed Apostolic Pentecostal, witness of God. In his deposition, he testified that he believed his sister Diane was possessed by imps and devils. He did not mean "possessed" like in movies, but he was confused. Attorney Bleyer mocked him by using the word "possessed" and did not give him a chance to explain. Steven believes every human being is generally good and it is their choice to let the devil speak to them in their mind and thoughts.

Steven heard Attorney Bleyer say the phrase, "[t]he monkey and the skunk" when he was done questioning him and it made him sick that Donna and Alicia had to hear that because he knows what it means. Attorney Bleyer called him a "stinking pussy" in slang. Steven contended that if the phrase was said on a construction site, the speaker would be up for sexual harassment because it was as bad as calling a colored person the "N" word.

Steven referred to one of his sisters a "fat cunt" during his deposition, but claims he got upset when Attorney Bleyer interjected about being laid out by his family if he said the same thing about his sister. Steven testified that he has since repented because he was sick and upset when he said it. However, Steven would not be offended if one of his children or grandchildren referred to a sibling as an "effing cunt."

**Testimony of Alicia Lockhart Wells**

Alicia Wells was present for Steven's deposition on September 20-21, 2022. During a break, Alicia remained in the boardroom and heard Attorney Bleyer ask Rev. Redwood, "Who wears the pants in your family?" Attorney Bleyer's voice sounded hateful and he was acting like a bully. The question was unnecessary and uncalled for and made her nervous for her deposition, but she has no complaints about her deposition because the attorneys were all very professional, including Attorney Bleyer.

**Testimony of Donna Lockhart**

Donna was present for Steven's deposition on September 20-21, 2022. Upon returning to the deposition room from a break, Donna saw Attorney Bleyer and Rev. Redwood in the deposition room and overheard Attorney Bleyer ask, in a very "condescending and mocking" tone, "Who wears the pants in your family?" Rev. Redwood did not respond, but Donna was embarrassed that it even happened.

Donna could tell that Steven was in pain and was having panic attacks during his deposition, but Attorney Bleyer asked fast questions and kept pushing him to answer, but then mocked his answers. Donna heard Attorney Bleyer make the statement about "the monkey and the skunk". She was embarrassed and could not believe those words came out of his mouth. She has worked construction and has heard things. Attorney Bleyer was not referring to a children's story. After the deposition, Donna looked up the phrase in the urban dictionary and it came up as everyone has referred to it.

**Attorney Joseph A. Bleyer**

While Attorney Bleyer did not submit any testimony at the evidentiary hearing, he adamantly denied making this statement in his response to the motion. (Doc. 186).

Attorney Bleyer's response also included affidavits from Charles Pierce and Joshua Hinkle, two of the attorneys present at plaintiffs' depositions (Docs. 186-1, 186-2), an affidavit from Pamela Bramlett, the court reporter transcribing the depositions (Doc. 186-3), as well as a declaration made pursuant to 28 U.S.C. §1746 from Joseph Bracey, the fourth attorney present for the depositions. (Doc. 186-4). None of these persons witnessed Attorney Bleyer inquire about wearing pants nor did any of them find Attorney Bleyer's questions to be demeaning, insulting, offensive, disruptive, and/or disrespectful towards Steven and his religious beliefs.

## ANALYSIS

The Court was not present during the deposition and the transcript does not provide verbal intonations or facial expressions. Now, 521 days later[5], this Court is called upon to determine whether Attorney Bleyer's conduct warrants sanctions, or even further investigation. Although Attorney Redwood's complaints were widespread, the focus was on four main topics: (1) The statement, "Who wears the pants in your family"; (2) The phrase, "The monkey and the skunk"; (3) Steven Lockhart's religious beliefs; (4) and, Attorney Bleyer's overall conduct and commentary throughout Steven's deposition.

### I.   Who Wears the Pants in your Family?

Five interested parties testified during the hearing that Attorney Bleyer asked Rev. Redwood, "[w]ho wears the pants in your family?" However, the timing of this motion and the circumstances surrounding the alleged question are suspect, both of which raise the issue of credibility.

---

[5] Number of days from the deposition of September 21, 2022 to filing of motion on February 24, 2024.

Attorney Redwood claims that Attorney Bleyer asked the exact same question several years ago, but she never brought it up. Instead, she let it go. Attorney Redwood testified that she had watched videos of (former) Chief Justice Rita Garman after her retirement, which this Court notes was on July 7, 2022, talking about the trials and tribulations she encountered as a woman in the law, which inspired Attorney Redwood not to let it go this time. But, she did let it go for more than 500 days before filing this motion, and then only filed this motion 114 days after Attorney Bleyer's clients were granted summary judgment[6]. This Court is also mindful that costs were taxed against plaintiffs on February 20, 2024, just four days before the filing of this motion.[7]

Attorney Redwood was not timid about objecting on the record, nor was she reticent about correcting Attorney Bleyer when she felt his conduct was questionable. Indeed, upon returning from a break on September 21, 2022, Attorney Redwood asserted the following:

```
9         (A short recess was taken)
10        MS. REDWOOD: I want to go on the record and make
11    an objection. Mr. Bleyer has repeatedly made comments while
12    the witness was answering or throwing in additional
13    questions while the witness was answering, and I would just
14    remind Mr. Bleyer to please wait until the witness finishes
15    his answer before asking another question or throwing in some
16    kind of a comment.
17        MR. BLEYER: Thank you. I will try to do that.
18        MS. REDWOOD: Thank you.
```
(Doc. 104-1, Deposition of Steven Redwood, p. 220:9-18).

---

[6] Number of days from the grant of summary judgment as to Buchanan and Forsythe on November 2, 2023 and the filing of this motion of February 24, 2024.

[7] Cost were taxed against plaintiffs in the amount of $813.00 in favor of defendant James White (Doc. 174) and against plaintiffs in the amount of $603.00 in favor of defendant Diane Brady. (Doc. 175).

Attorney Redwood did not raise any objection or seek to make a record regarding the alleged "Who wears the pants" insult by Attorney Bleyer, even though she clearly did so on this other occasion. Moreover, this Court is constrained to note that Attorney Redwood has experience in dealing with questionable deposition conduct and tactics.[8] Indeed, as held by (then) Chief Judge Easterbrook, Rule 30(d) of the Federal Rules of Civil Procedure specify how harassment is to be handled. *Redwood,* 476 F.3d 462, 468. An attorney can justifiably call off a deposition and apply for a protective order (plus sanctions). *Id.; see also* Fed. R. Civ. P. 26(c), 30(d)(3), and 30(d)(4). Instead, Attorney Redwood did not object and did not curtail the deposition. Furthermore, Attorney Redwood did not raise any concerns to this court prior to the filing of her motion, even when Steven's deposition was first submitted more than 8 months prior, on July 26, 2023, as an exhibit in support of a motion for summary judgment. (Doc. 103).

As for Rev. Redwood, this Court had a front-row seat at the evidentiary hearing and has serious concerns as to his credibility. There is no question that he is not an impartial witness. Upon observing him testify and throughout the hearing, the Rev. Redwood was angry and openly hostile towards Attorney Bleyer and G. Patrick Murphy, his counsel. The Court is also mindful that Rev. Redwood admitted to calling his former attorney, an African American, a "shoe-shine" boy, but placed the blame on Judge McCuskey and Judge Easterbrook for failing to understand why he did nothing wrong.

---

[8] *See Redwood v. Dobson, et al.,* 476 F.3d 462 (7th Cir. 2007). (According to Judge Easterbrook, this case was a grudge match that originated in a criminal proceeding against Rev. Redwood and resulted in a guilty verdict. Several years later, Redwood retaliated and blamed his attorney, an African-American, and called him a "shoe-shine" boy. Redwood was charged with a hate crime, and ultimately a state matter became a federal matter under 42 U.S.C. §§1983 and 1985 as Rev. Redwood claimed religious discrimination because his religion led him to "teach truth and righteousness to all persons, including defendant".).

The undersigned has reviewed an opinion authored by Judge Michael McCuskey. *Redwood v. Dobson, et al,* 00-2305 (C.D. Ill. Oct. 12, 2005). In that case, Judge McCuskey also had the opportunity to view Rev. Redwood while testifying and noted in a footnote that, "Redwood sued as "Reverend" Erik Redwood. At his deposition taken on September 13, 2001, Redwood was asked his job occupation and testified, "I'm a Renaissance man, I'm a reverend, I'm a paralegal in my wife's office, I'm a skilled craftsman in carpentry and electronics, and I teach those to people who need to learn employment." The footnote also indicated that "Redwood explained that he was ordained as a Buddhist reverend during the Vietnam war by a professor at the Asian studies department of the University of Illinois." (Doc. 199, 00-2305-MPM-DGB).

Based upon the totality of circumstances, plaintiffs have not met their burden in proving that Attorney Bleyer made the inquiry of Rev. Redwood about "Who wears the pants in your family?" While this Court has since learned that Attorney Redwood first raised this issue in correspondence to the attorneys dated April 23, 2023, neither the letter itself nor the exact language contained within it have been provided and/or submitted as evidence by Attorney Redwood.[9] Why she elected to withhold this information from the Court is not clear, but it does further undermine her credibility.

## II.  The Monkey and The Skunk

There is no doubt that Attorney Bleyer stated, "The monkey and the skunk". Indeed it is reflected in the transcript as follows:

```
11            MR. BLEYER: Okay. That's all the questions I
12     have for you, sir. The monkey and the skunk.
```

---

[9] The Court notes that there were 219 days from the deposition (September 21, 2022) until the letter (April 28, 2023) and 302 days between the date on said letter to the filing of this motion on February 24, 2024.

```
13             THE WITNESS: Thank God.
```
(Doc. 104-1, p. 243:11-13).

The Court must then focus on how it affected the deponent. Although Steven Lockhart testified at the hearing that Attorney Bleyer called him a "stinky pussy" in slang; his response at the deposition itself was merely "thank God", which seems an odd thing to say if someone just called you an offensive name. Furthermore, Attorney Bleyer questioned Steven a second time during the deposition, at which time the ending went as follows:

```
6 [Steven]   A: I am not – I am uncomfortable sitting here
7       in this town with you guys.
8 [Bleyer]   Q: What did I do to you?
9 [Steven]   A: You did nothing. It's what's out there.
10      Preferably that sheriff's office over there.
```
(Doc. 104-1, p. 300:6-10)

Again, Steven does not blame Attorney Bleyer or express any displeasure for any comment or action during the deposition, nor does he hold any ill will against him, which seems an odd response if he had been so vulgarly insulted as he claims. To the contrary, Steven affirmatively tells Attorney Bleyer that he did nothing to him, while purportedly blaming the sheriff's office for his discomfort (which incidentally was represented by Attorney Bracey, not Attorney Bleyer).

Upon receipt of this motion, neither this Court nor any member of chamber's staff – 7 in total – had ever heard the phrase, much less been aware of its purported meaning. In fact, upon receipt of the motion, a "Google" search was conducted and the first item retrieved was the children's poem that was cited during the hearing. The Google search did not reveal any definition that contained a slur or vulgarity. It was only after the

hearing concluded did the undersigned look up the phrase in the infamous 'Urban Dictionary', only to retrieve the following:

> "The Monkey Fucking the Skunk
>
> This is a phrase used by someone that is tired of another person. Usually used by a man in regards to his wife, girlfriend, or *biznatch* of some sort.
> Boy, I tell you what, I'm like the monkey fucking the skunk. I've had about all this stinking sumbitch I can stand."[10]

It is not clear to the Court what Attorney Bleyer meant when he uttered this phrase. However, as set forth *infra,* the record does not reflect that Steven was insulted and/or offended at the time nor did Attorney Redwood express any objection on the record. The Court does not find credible the assertion that Steven's tender sensibilities were upset by the so-called vulgarity. Indeed, this is the same man who called one of his sisters, albeit not one of Attorney Bleyer's clients, a "fat cunt" during the deposition in question. (Doc. 104-1, p. 229:4). During the same deposition, Steven also said he would "rather put a leash on a skunk and walked[sic] it down the street" (Doc. 104-1. p. 240:21-22) than be with his neighbor.

### III.   Religion

Many of the witnesses commented on Steven's religion and how Attorney Bleyer attacked and mocked him, and repeatedly used the word "possessed" in a condescending manner. However, Steven first used the term in his deposition testimony and Attorney Bleyer was attempting to clarify the meaning.

```
14 [Bleyer]   "Q: How could she – it's your house. How does
15            she control who comes to your house?
```

---

[10] https://www.urbandictionary.com/define.php?term=the monkey and the skunk (last visited 4/24/24, 2:13 PM).

```
16 [Steven]   A: She's crazy.
17 [Bleyer]   Q: Well, how – okay.
18 [Steven]   A: But more specifically, I believe the woman is
19            possessed. Okay?
20 [Bleyer]   Q: Possessed with what?
21 [Steven]   A: Imps, devils, whatever. Whatever triggers
22            her."
```
(Doc. 104-1, p. 180:14-22).

When asked how long she had been possessed, the conversation continued as follows:

```
2  [Bleyer]    "Q: Now, my question is, how long has she been
3              possessed.
4  [Steven]    A: It's been a while. Her nickname was Norman
5              Bates through high school.
6  [Bleyer]    Q: So she has been possessed since high school?
7  [Steven]    A: Yeah. She's unhinged. She's out there. She
8              has got a mean streak to her that is just unreal.
9  [Bleyer]    Q: Are any of your other siblings possessed?
10 [Steven]    A: Yes, I believe so.
11 [Bleyer]    Q: Which other siblings are possessed?
12 [Steven]    A: Brenda and Karen."
```
(Doc. 104-1, p.181:2-12).

This conversation continues about possession and Steven even expands as follows:

```
1  [Steven] "A: Yeah. If you want to use that word, keep
2           using it.
3  [Bleyer]  Q: Well, you used it. You said –
4  [Steven]  A: I'm a religious man and there's only –
5            there's only a few things that cause people to act like
6            this.
7  [Bleyer]  Q: What is it?
8  [Steven]  A: They're possessed. That's my position on it.
9            That's totally my position."
```
(Doc. 104-1, p. 182:1-9).

By the very language of the transcript, Steven reiterates that his sisters are possessed and grants permission to Attorney Bleyer to use the word "possessed". This Court respects the notion that many people have sincerely held religious beliefs that some people could be tormented by demonic possession. However, a fair reading of the deposition transcript does not support even an inference that Attorney Bleyer was mocking any sincerely held religious beliefs Steven may have. Instead, Attorney Bleyer was following Steven's lead while attempting to gain clarification on Steven's allegations and while vigorously defending his clients, to whom he owes a duty. Again, Attorney Redwood failed to voice any formal objection that her client's religious beliefs may be offended by Attorney Bleyer's line of questioning.

### IV. Attorney Bleyer

Finally, Steven testified at the hearing that Attorney Bleyer belittled him during the deposition, and instead of listening to his responses, interjected his own commentary and argued with him over his answers. For example, there were numerous references wherein Steven was complaining about his neighbor, Billie Forsythe, flirting with him and making him uncomfortable and distraught, "[l]ike she – like if I was that type of person, I could probably done what I wanted to, but I'm not". (Doc. 104-1, p. 238:1-2). When Attorney Bleyer attempted to follow up on what Steven meant, the conversation went as follows:

```
3 [Bleyer]    "Q: What do you mean done what you wanted to?
4 [Steven]    A: She was flirty.
5 [Bleyer]    Q: I don't understand. Done what you wanted to.
6            I don't understand.
7 [Steven]    A: You have had women flirt with you before.
8 [Bleyer]    Q: Look at me. I don't think they have.
9 [Steven]    A: I think they have. You have got cute hair.
```

```
10           MR. PIERCE: I think he is flirting with you.
11 [Steven]  THE WITNESS: It's - it's hard to explain women.
12           BY MR. BLEYER:
13           Q: You are the one that made the statement. I
14      just want to know. Give me some tips, some pointers. What
15      do you mean you could do anything you want?
16 [Steven]  A: I am a single man. So I am not doing too
17      good, I guess.
18 [Bleyer]  Q: So, I mean –
19 [Steven]  A: It's hard to explain.
20 [Bleyer]  Q: If she was flirting with you, how does that
21      make you emotionally distraught or upsets you?
22 [Steven]  A: It bothered me. I wanted to be – I want to
23      be left alone. I am a left alone type of guy.
24 [Bleyer]  Q      Just put another notch in your belt.
```
(Doc. 104-1, p. 238:3-24).

```
1  [Steven]  A: Huh?
2  [Bleyer]  Q: You could put another notch in your belt. Is
3       that what you mean?
4  [Steven]  A: Well, I don't know about that. I don't know
5       what I mean about that. I did – she made me really
6       uncomfortable, Bud."
```
(Doc. 104-1, p. 239: 1-6).

During that portion of the deposition, there is no question that Attorney Bleyer was trying to understand what Steven was saying, even blatantly asking on two separate occasions what he meant. While the conversation veered into "notch on the bedpost", an impartial reading of the entire colloquy surrounding it does not result in a finding of any disrespect or belittling. Steven even joked with Attorney Bleyer about his hair and called him "Bud". To the undersigned, there was no hostility. Attorney Bleyer was trying to clarify the record and clear up any ambiguity – a so called "meeting of the minds". Steven filed this complaint and raised the issue, opposing counsel was seeking to elucidate the ambiguous response.

## CONCLUSION

For the foregoing reasons, the plaintiffs' motion for sanctions and/or disciplinary referral (Doc. 176) is DENIED. The undersigned takes proper decorum and professionalism very seriously; however, plaintiffs and their counsel have not credibly established that Attorney Bleyer's conduct was unprofessional and meriting sanctions.

**IT IS SO ORDERED.**

**DATED: May 21, 2024**

>      */s/ Stephen P. McGlynn*
>      **STEPHEN P. McGLYNN**
>      **U.S. District Judge**